CITY OF CARONDELET TO THE USE OF MARTIN REUTER, Plaintiff in Error, *v.* LOUIS G. PICOT, Defendant in Error.

| 38 | 125 |
| 31a | 83 |
| 38 | 125 |
| 41a | 343 |
| 38 | 125 |
| 104 | 595 |
| 38 | 125 |
| 139 | 554 |
| 38 | 125 |
| 149 | 645 |
| 38 | 125 |
| 98a | 108 |

*Revenue—Municipal Corporations.*—The levying of taxes is a matter solely of statutory creation, and no means can be resorted to, to coerce their payment, other than those pointed out in the statute. A tax, in its essential characteristics, is not a debt, nor in the nature of a debt, but is an impost levied by the government upon its citizens for the support of the State. A municipal corporation cannot provide for the collection of taxes by a suit against the tax-payer, unless the power be specifically delegated by its charter.

*Error to St. Louis Circuit Court.*

*Jecko & Clover*, for plaintiff in error.

I. The court below erred in sustaining the demurrer to the plaintiff's declaration. The City of Carondelet, among other enumerated powers, has power to provide for the construction and repair of all side-walks and curb-stones, and for the cleaning of the same, and of the gutters, at the expense of the owners of the ground fronting thereon—Sess. Acts 1851, p. 145, s. d. 37 of § 4, Art. V. Section 5th enacts that "the city council shall have power to make all ordinances which shall be necessary and proper for carrying into effect the powers specified in the preceding section, and all other powers vested by this act in the corporation, the city government, or any department or officer thereof." By section 5, Art. VII. of the same act, p. 148, the city council "has power, by ordinance, to levy and collect a special tax," &c. The act to incorporate the City of Carondelet, Jan. 16th, 1860—Laws 1860, p. 319, § 11, Art. VIII., provided that the cost of grading, paving, repairing, and re-paving, &c., shall be apportioned and charged on the adjoining lots, &c., in the manner to be prescribed by ordinance, and such lien and charges may be enforced by a special tax and sale, in such manner as shall be prescribed by ordinance. That a city may bring an action for taxes, see Thompson v. Gardner, 10 Johns. 404; Mayor and Com. Council of Baltimore v. Hughes, Adm'r,

9—VOL. XXXVIII.

1 Gill. & Johns. 480; Mayor v. Howard, 6 Harris. & J. 383; Clemens v. Baltimore, 16 Md. 208.

A claim for paving taxes may be recovered in assumpsit; and on a declaration containing an *insimul computassent*, supported by evidence, recovery may be had.

Defendant in error, in person.

If the cost of constructing the side-walk and placing the curb was a tax or charge lawfully assessed against the defendant, or the land, still plaintiff could not maintain an action at law for the amount. " For the collection of taxes, no right of action is given, with a few exceptional cases; nor are taxes contracts between party and party, either express or implied "—Pierce v. Boston, 3 Met. 521. " It is a rule," (says Parsons, C. J.,) " founded in sound reason, that when a statute gives a new power, and at the same time provides the means of executing it, those who claim the power can execute it in no other way. When we find a power in the plaintiffs to make the assessments, they can enforce the payment in the method directed by the statute, and not otherwise; and that method is by the sale of the delinquent's shares. This rule applies to all taxes, public and private. No action can be maintained to compel the payment of State, county or town taxes, except in the particular cases in which an action is given by the statute "— Andover v. Gould, 6 Mass. 44; re-affirmed in Andover v. Hay, 7 Mass. 102.

In the case of the City of Camden v. Allen, 2 Dutch. 401, 403, the question whether the remedy is exclusive or cumulative is discussed, and authorities cited for the rule that the remedy provided by the statute is exclusive of all others.

WAGNER, Judge, delivered the opinion of the court.

The court sustained a demurrer to the petition in this case, and the only question that arises is, whether the City of Carondelet had power by its charter to authorize the bringing of a personal suit against the defendant to the use

City of Carondelet to use, &c., v. Picot.

of the plaintiff, for special taxes assessed against him for constructing side-walks, pavements, and putting up curbing, fronting his property in said city.

By the " Act to incorporate the City of Carondelet," approved March 1st, 1851, (Sess. Acts 1851, p. 139,) in § 4, Art. V., power is given the city to remove all obstructions from the side-walks, and to provide for the construction and repair of all side-walks and curb-stones, and for the cleaning of the same, and of gutters, at the expense of the owners of the ground fronting thereon. Sec. 5 invests the city council with power to make all ordinances necessary and proper for carrying into effect the powers specified in the preceding section. By § 5, in Art. VII., power is delegated to the city council, by ordinance, to levy and collect a special tax on the holders of lots on any street, lane or avenue, or part of any street, lane or avenue, according to their respective fronts owned by them, for the purpose of grading or paving the side-walks of such street, lane or avenue, and for the purpose of lighting the same. And § 6, same article, gives the council power to direct by ordinance the manner in which any property, real or personal, advertised for sale, or sold for taxes by authority of the corporation, may be redeemed.

In pursuance of this charter, the city council of Carondelet, in August, 1853, passed an ordinance in relation to curb-stones and side-walks. The ordinance provides (§ 1) that for the setting of curb-stones and laying of side-walks, upon all property belonging to the city, and upon all lots where the owners object to have the same done by the city, or where the owner or owners neglect or refuse to have the same done as provided for by ordinance, the engineer, under the direction of the mayor, shall proceed to let out such work by contract to the lowest and best bidder, taking good security for the faithful performance of the same. Provision is then made for notifying the owner or owners of lots, when the council directs the setting of curbstones and laying of side-walks on any street ; and where the engineer contracts to have it done on behalf of the city,

it is made his duty, as soon as the work is done, to appor-
tion the amount, and charge the same to the ground, ac-
cording to its front on such street.    Immediately after such
apportionment, a certified copy thereof is to be delivered to
the city register, and such apportionment is made a special
tax and lien upon the property so apportioned.    It is the
duty of the register, as soon as he receives the apportion-
ment, to deliver a copy of the same to the constable, who
shall present the accounts contained therein to the respect-
ive property holders; and if payment is refused, he shall
proceed to collect by levying on personal property.    If the
demand is not satisfied, or the money realized by the sale of
personal property, the register is required to advertise the
lots owned by the delinquents, on which the apportionment
is charged, and sell the same.    The manner of proceeding
with the sale is then pointed out; and provision is also made
for redemption.    Section 12 declares that whenever the mayor
deems proper, he may order suit to be brought for non-pay-
ment of such special tax, instead of selling lots, and he shall
direct the register accordingly ; the suit to be brought, to
the use of the contractor who executed the work, in the
name of the city.

By an ordinance, approved February 24th, 1859, curbing
and paving was ordered to be done in front of defendant's
property on certain streets, which he neglected or refused
to do, and the work was let out by the engineer to the
plaintiff.    The 3d section of this ordinance directs the
manner in which the engineer shall award the contracts,
and provides that they shall be given to the lowest and best
bidder, " the city, however, being in nowise compelled to
pay for said work any sooner than the amount of cost there-
of, to be levied on the property respectively, shall have been
collected and paid into the city treasury."

The court below held that this action could not be main-
tained.    The interest involved is purely local, but the prin-
ciple is important.    Corporations have no powers except such
as are expressly granted in their charters, and such as are

auxiliary or necessary to the proper exercise of the powers conferred; and they are strictly limited to the exercise of such powers; and all statutes or charters creating corporations are to be strictly construed—Blair v. Perpet. Ins. Co., 10 Mo. 559; Beatty v. Knowles, 4 Pet. 152; Penn. R.R. Co. v. Canal Coms., 21 Penn. 9; The People v. Utica Ins. Co., 15 Johns. 357. The power given in the 4th section of Art. V. is to provide for the construction and repair of all side-walks and curb-stones, at the expense of owners of ground fronting thereon. No remedy is prescribed for enforcing payment against the owners, but the general power to make all ordinances necessary to carry into effect the provisions of the charter is conferred. And by the 5th sec tion of the 7th article, the authority is stated in more explicit terms, where full and adequate power is directly granted, to levy and collect a special tax on the holders of lots for the purpose of grading, paving, &c. The 6th section then gives powers to direct, by ordinance, the manner in which any property, real or personal, advertised for sale, or sold for taxes by authority of the corporation, may be redeemed. That it was the clear and manifest intention of the Legislature to confer power on the corporation to subject the lots to sale, for the collection of the special tax, is abundantly shown by this last section authorizing the city to prescribe the mode and manner of redemption. This may be regarded as a legislative interpretation of the power —City of St. Louis v. Russell, 9 Mo. 509. In City of St. Louis, to the use of McGrath, v. Clemens, 36 Mo. 467, we held that a suit against a party to recover the amount of a special tax levied under the act of March 5th, 1855, p. 25, § 6, was a proceeding *in personam*, and authorized a general judgment for the amount of the tax and interest, as well as a special judgment against the property. But the 6th section of the act on which this adjudication is based, gives the power in express terms, and declares that the owners and holders of the property shall be bound to pay for the work, the same as though the liabilities were contracted by themselves,

and that they may be sued therefor accordingly.   We find no such provision or authority embodied in the Carondelet charter, and we can determine that it exists only by implication or construction.   There is no question made here as to the legality of the assessment of this special tax, but it is objected that there is no right to sue by personal action. The levying of taxes is a matter solely of statutory creation, and no means can be resorted to, to coerce their payment, other than those pointed out in the statute.   Should a tax be imposed, and no method provided by law for its recovery, a resort to legal proceedings would then be a matter of necessity.   But this could only arise where the Legislature had failed entirely to indicate any mode or manner of collection.

"A tax, in its essential characteristics, is not a debt, nor in the nature of a debt.   A tax is an impost levied by authority of government upon its citizens or subjects, for the support of the State.   It is not founded on contract or agreement.   It operates *in invitum*.   A debt is a sum of money due by certain and express agreement.   It originates in, and is founded upon contract, express or implied "— Pierce v. Boston, 3 Metc. 520 ; Camden v. Allen, 2 Dutcher, 398.

Unless the power is specifically delegated or expressed, no right of action exists for taxes, and they cannot be turned into judgments.   Both the State and municipal corporations have a much better and more expeditious remedy. They have the right by summary process to enforce collection, by levy and sale ; and when this power exists, complete and ample as it most assuredly is, it would be monstrous, without plain and express authority to that effect, to say that they could abandon at pleasure the usual and simple manner of making collections, and subject the delinquent tax-payer to all the harassments, vexations, and costs of a legal proceeding.   That the special tax assessed or apportioned was to be in accordance with the respective fronts of ground on the street, would seem to denote an intention to

make the property liable. But the city, by its ordinance, provided that resort might first be had to sale of personal property, and if the amount could not be satisfied in that way, then the lots should be advertised and sold. No reason is shown why this remedy was not pursued.

The 12th section of the ordinances under which this proceeding is sought to be enforced, which declares that the mayor, whenever he deems proper, may order suit to be brought for non-payment of the special tax, instead of selling the lots under advertisement, is, in our opinion, without authority, and not warranted by the charter. And such seems to have been the interpretation of the city authorities themselves, for by the very ordinance under which this contract was executed, it is provided that the city shall in nowise be compelled to pay for the work any sooner than the amount or cost thereof shall have been collected, by levy and sale of the property, and paid into the city treasury: thus plainly implying, if not expressly declaring, that the property on which the special tax was charged was the subject matter out of which payment was to be obtained. The plain meaning and import is, that the city is primarily liable, and that the contractor agrees to wait for his pay till the city shall collect it by a proceeding against the property on which a lien is constituted. The improvements are made by the city, and the contracts are with the city. There are but two parties to the contracts: the parties bidding and the parties accepting. The property holders are not parties to the contracts, nor is there any privity existing between them and the contractors. The city makes out the apportionment, levies the assessment, and enforces the collection. The city has a lien on the property; the contractors have not. It may be said that the property may not be sufficient to pay the assessment. It is a sufficient answer to this to say, that it will not be presumed that it was ever intended that a corporation, in the exercise of this high prerogative power, should absorb the whole value of a person's property, and then come on him for a deficit.

Upon general principles, the cost of improvements should be paid for out of the public treasury, but the Legislature has seen fit to confer certain privileges on corporations, empowering them to levy special taxes, and make assessments for benefits. While the existence of the right to confer this power is not denied, yet it is the exercise of a high prerogative in derogation of the rights of the citizen and of private property, and must be strictly construed. Those who wish to avail themselves of this extraordinary power must show clearly, without resorting to intendment, that it really exists.

In our opinion, the demurrer was properly sustained.

Judgment affirmed. Judge Holmes concurs; Judge Lovelace absent.