STATE OF MISSOURI, TO THE USE OF M. A. ROSENBLATT,
Plaintiff in Error, *v.* FREDERICK HEMAN, Defendant in
Error.

### June 24, 1879.

1. The revenue law of 1870 did not operate *proprio vigore* to divest title in
lands forfeited for the non-payment of the taxes of 1868, and returned as
sold to the State; title was not divested until the land was sold by the
State to private purchasers, the State meanwhile retaining a lien.

2. The pecuniary claim for taxes was not extinguished by the judgment of the
County Court on the tax-list, and the subsequent forfeiture to the State.

3. The law of 1877 authorizing proceedings in the Circuit Court to obtain
judgment against the property for back taxes goes only to the remedy,
and is not retrospective within the meaning of the constitutional prohibi-
tion.

4. The Statute of Limitations may be so changed as to extend the limit, at any
time before the action is actually barred.

5. The statute did not begin to run against the claim of the State for taxes of
1868 until an action accrued for them in 1872.

6. The State, in 1879, had a subsisting cause of action for the back taxes of
1868, not barred by the Statute of Limitations.

ERROR to St. Louis Circuit Court.

*Reversed and remanded.*

KING, CHAPIN & KING, M. B. JONAS, and F. SPIES, for
plaintiff in error: The fact that the State allowed and
required the property to be assessed after forfeiture, was a
waiver of the forfeiture. — *Clark* v. *Strickland*, 2 Curt.
439. But the lien would still remain in favor of the
State. — *Goddard* v. *Renner*, 57 Ind. 532, 536; *Wood* v.
*Colvin*, 5 Hill, 228; *Bodine* v. *Moore*, 18 N. Y. 347.
The act of April 12, 1877, is not retroactive or retrospec-
tive. — *The State ex rel.* v. *Hays*, 47 Mo. 187; *De Cordova*
v. *Galveston*, 4 Texas, 470; *Carondelet* v. *Picot*, 38 Mo. 125,
130; Blackw. on Tax-Titles, 1; Cooley on Tax. 1; Cooley's
Const. Lim. 361, 362; *Smith* v. *Byron*, 34 Ill. 364; *Paschal*
v. *Perez*, 7 Texas, 365; *Woodfin* v. *Hooper*, 4 Humph. 13;
*Hope* v. *Johnson*, 2 Yerg. 123; *Wellshear* v. *Kelly*, 8 Cent.
L. J. 434. No statute of limitations can begin to run until
a cause and right of action exists, and has accrued to some

person who is capable of suing upon it. — *Dillon* v. *Bates*, 39 Mo. 292, 301; *Wickersham* v. *Russell*, 51 Pa. St. 71; *Council* v. *Moyamensing*, 2 Pa. St. 224. No action would lie for the recovery of unpaid taxes until such *action* should be or was given by statute. — *Carondelet* v. *Picot*, 38 Mo. 125, 130; *Brenchweh* v. *Drake*, 31 Ohio St. 652. There can be no doubt as to the power of the Legislature to make changes in the Statute of Limitations. — *Siebert* v. *Copp*, 62 Mo. 182; *Bigelow* v. *Bemis*, 2 Allen, 496; *Smith* v. *Morrison*, 22 Pick. 430; *Bingham* v. *Bigelow*, 12 Metc. 268–273; *Bradford* v. *Shine*, 13 Fla. 393; Ang. on Lim. (6th ed.) 16, 17, and notes; *Mayor* v. *Colgate*, 12 N. Y. 152; *Stephens* v. *St. Louis National Bank*, 43 Mo. 389.

R. F. WINGATE, for defendant in error: The pecuniary demand of the State was extinguished and merged by the sale and forfeiture of the land involved, in October, 1869, and hence the State has no subsisting cause of action. — Acts 1865, pp. 161, 162; Blackw. Tax-Titles, 459. The act of 1877 created a new obligation, imposed a new duty, and took away a valid defence, and hence is unconstitutional. — Const. Mo., art 2, sect. 15; *Insurance Co.* v. *Flynn*, 38 Mo. 483; *Barton* v. *Watson*, 49 Mo. 290; *De Cordova* v. *Galveston*, 4 Texas, 470. The action was barred by the statute. — *St. Louis* v. *Newman*, 45 Mo. 138; Wag. Stats. 917, sects. 8, 10, 33.

BAKEWELL, J., delivered the opinion of the court.

This is an action to enforce the lien of the State on the realty described in the petition, for back taxes assessed for 1868. The petition alleges that defendant was the owner of the land described in the petition. The tax-bill filed with the petition is for taxes due in 1868. The petition seems to set forth all the facts required by sect. 6 of the act concerning delinquent taxes, passed April 12, 1877, on which the action is based.

In the court below, defendant interposed a demurrer to

the petition, which was sustained; and plaintiff declining further to plead, there was final judgment, from which plaintiff appeals.

It is insisted that the pecuniary demand of the State was extinguished by the sale and forfeiture of the lands in October, 1869, set out in the petition, and hence that the State has no subsisting cause of action; that the act of Assembly which gives the right of action, so·far as it authorizes recovery of the taxes, is in violation of the Constitution of the State, as being retrospective in its operation, and that the action is barred by the Statute of Limitations.

The act under which this land was forfeited to the State provides (Wag. Stats. 1870, p. 1205, sect. 116) that every tract not sold, for want of bidders, " shall be, and is hereby, declared forfeited to the State, and thenceforth all right, title, and interest of every person, of, in, and to said land, shall be considered as transferred to, and vested absolutely in, the State; and such real estate shall not afterwards, in any case, be subject to taxation or sale as other lands, except as hereinafter provided, until sold again to some person by the State, or redeemed." The act of March 18, 1870 (Acts 1870 Adj. Sess., p. 114), provides (sects. 17, 18) for the assessment of lands theretofore forfeited to the State for the nonpayment of taxes, and that the taxes, interest, and costs on any tract forfeited to the State for 1868, or any subsequent year, are a lien upon such tract, and provides for redeeming such lands. The act of March 20, 1872 (Wag. Stats. 1154), provides for the redemption of lands forfeited for taxes, and in 1875 a supplementary act was passed providing for the receipt and collection of taxes due upon forfeited lands.

By the terms of the law in force at the time of the alleged forfeiture, it was the duty of the collector to file with the clerk of the County Court a delinquent-list of lands on which taxes were unpaid. On this list he applied for judgment at a stated term of the County Court, having first given notice by publication in a newspaper. If no owner

appeared, the County Court rendered judgment against the lands for taxes, interest, and costs, in the name of the State, and made an order that the lands be sold.    A right of appeal existed to the Circuit Court by any one aggrieved. The clerk of the County Court then certified to the collector the list of lands against which judgment was rendered, and this certified list was the process on which the land was sold. On the day specified in the order of sale, provided the taxes and costs were not paid meanwhile, the collector exposed all the lands on the list for sale to any one who would pay the whole amount due for the least quantity of each tract offered for sale.    The clerk of St. Louis County was not obliged to attend the sale, but after it was concluded he made out his sale-book, in which he marked each lot that remained unsold, "sold to the State." The sale-book of property thus marked "sold to the State" was called the "forfeited list," and was open to public inspection; and the land in it was subject to redemption by paying double the amount for which it was forfeited, and all taxes to the day of redemption, and fifteen per cent on each year's tax to the day of redemption; the amount of taxes to be fixed by the collector at an amount not exceeding the yearly amount of tax for which the land was last forfeited to the State. Wag. Stats. 1870, pp. 1200, 1206. At the expiration of two years, if the forfeited lands were unredeemed, they were sold by the collector on four weeks' notice, and a tax-deed executed by the county clerk to the purchaser.

Whether it would be competent for the Legislature to vest title of land in the government for the continued delinquency of the owner, by the formal acts of parties acting rather in a ministerial than a judicial capacity, and without inquisition, it is not necessary now to inquire.    Forfeitures are not favored by the law, and there seems to be nothing in the provisions of the law under which this property was returned as delinquent which necessitates the interpretation that the title to the State vested, *proprio vigore*, as soon as the land was marked sold to the State upon the

delinquent-list. The intention of the Legislature would seem to have been that the title to the land should not vest in the State until such time as this might become necessary to make title to a purchaser at the public sale of unredeemed lands provided for by the act. Such land might be redeemed at any time within two years, on making the prescribed payments ; no provision is made for the execution of a deed to the owner on such redemption, nor is it anywhere provided that, on receiving the certificate of redemption, the title shall revest. Whilst the law says, as to lands forfeited for taxes, that " thenceforth all title shall be considered as transferred to, and vested absolutely in, the State," the right to waive the forfeiture is manifestly reserved, and, at least until the date of the sale by the State, it cannot be considered that the title of the owner was divested *proprio vigore* of the act, even if it be held that this could be done at all. The common-law rule is, that in all statutes declaring forfeitures, it is intended upon inquisition of office and office found, this being a necessary incident, and therefore supplied by intendment. Acts vesting title in the king were always interpreted to mean that there must be an inquisition before the title vests. The king could not have his right but by solemn matter of record, it being a part of the liberties of England that the king cannot enter upon any man's possessions upon bare surmises, without the intervention of a jury. 3 Bla. Comm. 259. It has been held by learned judges in this country that a law positively dispensing with such inquisition is a violation of that provision of Magna Charta to be found, in substance at least, it is believed, in the Bill of Rights of every State of the Union, that " no man shall be disseized of his freehold but by the judgment of his peers or the law of the land." It has also been held, where the collection of the revenue is concerned, that the principles of the common law in respect to inquisitions are not to have a supremacy over the positive acts of the legislature. The cases will be found cited, and are reviewed, in the twenty-third chapter of Black-

well on Tax-Titles. It may, as he concludes, be difficult to perceive why the term " law of the land," in our constitutions, should not always be construed according to the interpretation always given those words in Magna Charta, from which they are adopted into our constitutions. But if it be granted that the salutary principle of the common law must yield to the will of the Legislature, unmistakably declared, and that this is not in violation of the Constitution, it is at least certain that it can yield to nothing less than an express and unmistakable declaration of the legislative will; and that unless it is apparent, beyond all reasonable doubt, that the statute was intended absolutely to divest title upon the land being offered for sale, and not being sold for want of bidders, the forfeiture ought not to be construed to have that effect. Now, however explicit the language of sect. 116 may be (Wag. Stats. 1870, p. 1205), the subsequent provisions as to redemption leave no doubt that the true meaning of the law was that no title should pass absolutely out of the owner, at least until the proper steps were taken to enforce the forfeiture by a sale of the land on the part of the State. Up to that time the law contemplates that the State may waive its claim to the land, and may again assess it for taxation, and take further proceedings to enforce the payment of subsequently accrued taxes, or of those already due at the time of forfeiture.

The object of the law was revenue, to be raised by collecting the taxes assessed upon lands, and it is unreasonable to give it a construction which defeats its object. The law nowhere directs the taking possession or appropriation of the land, and sect. 116 was intended merely as preliminary, and was to work no divestiture of title until the second sale. It became subject to vest in the State on being marked unsold, and the title was to be actually divested out of the owner upon the public sale to a private purchaser provided for by the act, and not before; the State, meanwhile, retaining its lien created by the assessment. This is clear from the object of the law, and the provisions as to redemption.

The act of Congress of August 5, 1861, by express terms provided that title in lands forfeited for taxes should thereupon become forfeited to the United States ; .but it was held that this did not operate *proprio vigore* to divest title in the land on the non-payment of the tax, and that the title remained in the owner until the public sale by the United States provided for by the act, and that up to that date the owner might redeem, though the sixty days for redemption limited by the act had expired.    *Bennett* v. *Hunter*, 9 Wall. 326.

If the title did not vest in the State, the claim for taxes was not extinguished.    The judgment of the County Court upon the tax-list did not establish any claim of the State against the owner of the land taxed, and was merely the declaration of a lien upon the land, and an order for its sale to pay the taxes and costs.

2. So far as the constitutional question is involved, it is not objected to the law of 1877 that it changes the remedy. This, it is admitted, might be done without any violation of the Constitution.    But the contention is that this act creates a new obligation, imposes a new duty, or takes away a valid defence.    This cannot be said, of course, unless the forfeiture of the land to the State under the act in force when the land was offered for sale worked an extinguishment of the tax.    The position assumed is that the judgment of the County Court, the sale and forfeiture, vested the title in the State, and therefore extinguished the claim for taxes.    It appears from what has been said that we consider that title to the land never vested in the State, and that the claim of the State to the collection of this tax was never extinguished by any forfeiture of the land.

At the time the tax in question became due, the State could proceed to its collection only by the summary process given by the existing law against the land assessed, and upon which the tax was a lien.    It had no power to proceed to get judgment and a special execution against the

land in a direct proceeding against the tax-payer, conducted according to the ordinary form of civil proceedings in this State. This power was conferred by the act of 1877, and preceding enactments in 1872 and 1875 have somewhat similar provisions; but these provisions are not retrospective in their operation, within the meaning of sect. 15, art. 2, of the Constitution. The law of 1877 merely varies the nature and extent of the remedy; it does not confer upon the State a right that it did not have before. The liability for the tax existed already; no new obligation was created, and no new duty imposed. The tax-payer was always bound to pay his taxes; but until the statute gave a right of action against him, the State could enforce this obligation in no other way than by pursuing the summary remedy given by law against the property assessed. The laws of 1872, 1875, and 1877 neither created the obligation nor imposed the duty of paying the taxes assessed in 1868, nor imposed any lien upon the land to which it was not already subject. The cause of action existed before the statutes; it is the remedy which they provide that is new. The scope and object of the law seems to be to provide for such a judgment, and for such special execution against the land on which the tax is due, as shall pass a title to the purchaser which shall not be liable to the objections open to sales under the old tax-law, and which rendered proceedings to collect delinquent taxes nugatory in many instances for want of purchasers who were willing to advance any sum for a mere tax-title.

3. The remaining question is as to the Statute of Limitations, which provides (Wag. Stats. 918, sect. 102) that an action upon a liability created by statute, other than a penalty or forfeiture, is barred in five years. .

We do not think that this clause of the statute can be held to apply to the summary proceeding on the part of the State to forfeit land for non-payment of taxes. The actions spoken of in the statute are designated as "personal

actions" and as "civil actions." In the summary proceeding referred to, there is no judgment against the person, no execution against his goods, no provision for any trial according to the accustomed forms. The proceeding is a proceeding apart, apparently not in the contemplation of the Legislature when speaking of civil actions. No action against the tax-debtor, in any proper sense of the word, existed before the act of March 30, 1872 (Sess. Acts, p. 131, sect. 226), which gave the County Court power to bring suit at any time, in any court of competent jurisdiction, against the owner for taxes on forfeited lands. This section was repealed by sect. 8 of the act of March 31, 1875 (Acts, p. 84), which again gave power to the County Court to sue at any time the owner of forfeited lands for the taxes due on them; and in 1877 the present act was framed, which in plain terms does away with all limitations as to this class of actions. The action was given by the acts of 1872 and 1875, and was kept alive by their provisions. If this is not so, then the action was given by the act of 1877. In either case there is no bar, because the statute did not begin to run until the action had accrued to a person capable of suing. *Dillon* v. *Bates*, 39 Mo. 301. No action, in the absence of any statute to that effect, lay for the recovery of unpaid taxes. *Carondelet* v. *Picot*, 38 Mo. 125.

It was clearly competent for the Legislature to make the changes in the Statute of Limitations at any time whilst the right to sue had not been already barred. *Seibert* v. *Copp*, 62 Mo. 182.

. We think that the demurrer should have been overruled. The judgment is reversed and the cause remanded. All the judges concur.