NEBRASKA CITY, PLAINTIFF IN ERROR, v. THE NEBRASKA CITY HYDRAULIC GAS LIGHT AND COKE CO., DEFENDANT IN ERROR.

1. **Rescission of Contract.** Generally a contract cannot be rescinded unless by consent of all the parties to it, except in cases of fraud. And a declaration by one party that he rescinds the contract, followed by a refusal on his part further to perform it, not acquiesced in by the other party, does not amount to a rescission, but only a breach.

2. **Practice:** ERROR. Evidence offered in support of an alleged defense, which had been erroneously held bad on demurrer to the answer, was properly rejected on the ground of irrelevancy. The error in such case lies not in the rejection of such evidence, but back of this, and in the ruling on the demurrer.

3. **Taxation.** Without an assessment of his property, the public has no valid claim upon an individual for taxes.

4. **Taxes:** SET-OFF. In an action against a city to recover for gaslight furnished it under a special contract, delinquent taxes due to the city from the plaintiff are not a proper subject of set-off under the law respecting the collection of taxes, as it stood prior to the act of March 1st, 1879, providing a system of revenue.

5. **Quære.** Whether, as a part of the consideration for supplying gaslight to a city, an agreement to exempt from taxes, property of the gas company employed in the manufacture of gas, is valid.

6. **Contract:** CONSIDERATION: ILLEGAL PROMISES. Where a city has authority to contract therefor, it cannot resist payment for gaslight furnished, because of illegal promises as to the particular fund from which payment would be made. The consideration of such promises being legal, the price would be paya-

ble, if not otherwise, out of the general fund, and the objectionable provisions may be rejected, and the rest of the contract be permitted to stand.

**7. Contract for Gaslight with City:** ESTIMATE. The estimate by the city engineer provided for in section 32 of the act relating to the incorporation of cities of the second class is not required in case of a contract with a gas company to light the city with gas.

ERROR to the Otoe county district court.

The action was brought by the gas company against Nebraska City to recover $291.66 for gas furnished under contract to the city during the month of June, 1877. To the *fourth, fifth*, and *seventh* paragraphs of the answer (the substance of which is set forth in the opinion) a demurrer was filed, which was sustained and exceptions taken. Upon trial before POUND, J., judgment was rendered in favor of the gas company for the amount claimed, and the city brought the cause here for review upon a petition in error.

*J. C. Watson*, for plaintiff in error, contended *inter alia:*

1.    That the contract, exempting as it does the property of the gas company from taxation, providing for a miscellaneous appropriation of the sinking fund, and in exempting the company from payment of cash into the sinking fund, was in violation of law; violates also the city charter by increasing the general expenses of the city government to such an extent as to necessitate the levying of a tax for general purposes of more than five mills on the dollar, and that in making such contract the officers of the city exceeded their authority. *Weeks, v. City of Milwaukee*, 10 Wis., 186. Gen. Stat., Chap. 66, Sec. 2. *Id.*, Chap. 9, Sec. 31, subd. XLV. *Halstead v. Mayor*, 3 N. Y., 430. *Brady v. The*

*Mayor,* 20 *Id.,* 312.    *Thomas v. City of Richmond,* 12 Wall., 356.    Dillon Mun. Corp., secs. 372, 381.

2. That the court erred in not allowing the city to show that no estimate was made in regard to the contract, as required by Gen. Stat., p. 151, sec. 32, as the furnishing and erecting of lamps and lamp-posts are certainly improvements within the meaning of the statute.

3. That the contract being void in part, on account of being in violation of the statute, is void *in toto.* *Austin v. Bell,* 20 Johns., .442.    *Van Alstyn v. Wimple,* 4 Cow., 547.    *Burt v. Place,* 6 Cow., 431.    *Loomis v. Newhall,* 15 Pick., 159.    *Baldwin v. Palmer,* 10 N. Y., 232.

*M. L. Hayward,* for defendant in error.

1. No principle of law is better settled than that a party who would rescind a contract must place his adversary " *in statu quo.*"    *Taft v. Wildman,* 15 Ohio, 128. *Casswell v. Manufacturing Co.,* 14 Johns., 453.    *Wilt & Green v. Ogden,* 13 Johns., 56.    *Ellis v. Hoskins,* 14 Johns., 363.

2. Where one party breaks a contract, the amount which would have been received if the contract had been kept is the measure of damages.    *Doolittle v. McCullough,* 12 Ohio State, 364.    *Marsh v. Blackman,* 50 Barb., 329.

3. In no event should the Gas Company recover less than the full contract price for June, because the price is one entire sum for the month, and if the notice could have any effect at any time it could not for that month.    Where contract is for time certain, if party is without cause discharged before the time, he is entitled to receive for full time.    Parsons on Contracts, 4th ed., 518–528.    *Davis v. Maxwell,* 12 Met.,

286.  *Read v. Moor,* 19 Johns., 337, and cases there cited.

4.  The city, by accepting the gas, has ratified the contract, and can not deny its legality.   15 Cal., 591. 31 Cal., 26.   7 Cal., 463.   1 Dillon, 478.   9 Cal., 453. 20 N. Y., 319.   It must pay the contract price. 9 Cal., 453.   18 B. Mon., 41.   7 Ohio State, 327.   12 Ohio State, 624.

5.  If any tax was due the city from the Gas Company it could only be collected in the manner pointed out by statute.   (Gen Stat., sec. 54, p. 917.)   In no event could such tax be pleaded as a counter claim or set-off in this action.   Statutes, 540, §§ 101 and 104. Cooley on Taxation, pp. 298 and 300.

LAKE, J.

We shall confine our examination to such of the alleged errors as were relied on by counsel for the plaintiff in error in argument as ground for a reversal of the judgment.   And, *first,* did the court below err in sustaining the demurrer " to the fourth, fifth, and seventh defenses " of the answer?

It seems that at the time in question there existed a contract between the plaintiff in error and the defendant company, whereby the latter was to furnish to the city, at a stated price per month, gaslight for its streets, etc.   That, while the company was engaged in the due performance of this contract on its part, the city authorities undertook to rescind it, and to that end passed the resolution, and gave the notice to the company, which form the basis of this fourth defense or answer, and which was in these words, viz.: " For a *fourth,* further, and separate defense to said alleged cause of action defendant alleges that, on or about the 11th day of June, 1877, defendant, by a resolution of

its common council, approved by the mayor, declared said alleged contract at an end, and wholly rescinded; and on that day duly notified the plaintiff of such action; and that, from that time on, said contract was wholly rescinded; and directed plaintiff to furnish no more gas or light, and to light no more lamps, and to do nothing more whatever under said contract or modifications."

We do not think that what is thus set forth shows a rescission of the contract. It is only a declaration on behalf of the city to that effect, but to which it is not shown that the company had in any way assented. Generally a contract cannot be rescinded, unless by consent of all the parties to it, except in cases of fraud. Chitty on Contracts, 640. Therefore, there being neither assent nor fraud on the part of the gas company shown, it is clear that the contract remained in full force, notwithstanding this declaration of the city authorities to the contrary. But, although no rescission is shown, there is one material allegation which, admitted to be true, as by the demurrer it is, has an important bearing on the rights of the parties in this action. That allegation is, that on the 11th of June the gas company was duly notified and requested " to furnish no more gas or light, and to light no more lamps, and to do nothing more whatever under said contract."

As we understand the law applicable in such cases, it gave to the city, notwithstanding the contract, the absolute right at its own election to decline to receive any more gas under it, thereby refusing performance on its part. *Clark v. Marsiglia,* 1 Denio, 317. The taking of this step, however, did not amount to a rescission of the contract, but simply a breach of it, for which the company, in a proper action, would be entitled to recover adequate damages. But in such ac-

tion the contract price of the gas furnished, after the refusal to receive it, would not necessarily be the meassure of damages recoverable.

And in this connection it is proper to refer to an item of evidence, the rejection of which is alleged for error. We allude to the notice given to the company, in pursuance of a resolution of the city council, to desist from further supplying gaslight to the city under said contract. As the pleadings stood at the time of the trial, by reason of the sustaining of the demurrer, to this fourth count of the answer, the rejection of this evidence on the ground of immateriality or incompetency was not error. *The error lay back of this*, and in holding, on the demurrer, that such notice was of no consequence.

By the fifth defense in the answer it was alleged in effect that, by the terms of the contract in question, the franchise and property of the company, employed in the manufacture of gas, were exempted from taxation for several years for municipal purposes, by reason of which there was lost to the city the sum of $4,200, which it should have received from said company as its proportionate contribution to the municipal revenues during that time.

As to the validity of this exemption, and whether it was a binding agreement, it is not necessary here to decide; but if it were, very respectable authority is cited by counsel for the defendant in error to sustain him in his claim that it was enforceable against the city on the theory that it was an indirect mode of making payment in part for gas supplied. *Grant v. City of Davenport*, 26 Iowa, 396. Howsoever this may be, there is another very conclusive answer to this pretended set-off, which is, that for those years there was neither an assessment of said property, nor the levy of a tax upon it for city purposes, without which there

could be no valid claim against the company for con-tribution to the public revenue. Mr. Cooley in his treatise on taxation says: "Of the necessity of an assessment no question can be made. Taxes by valu-ation cannot be apportioned without it. Moreover, it is the first step in the proceedings against individuals subject to taxation, and is the foundation of all which follow it. Without an assessment they have no sup-port, and are nullities." *Thurston v. Little*, 3 Mass., 429. *People v. Hastings*, 29 Cal., 449. No tax is due unless it is assessed. *Miller v. Hale*, 26 Penn. St., 432.

The seventh defense of the answer alleges in sub-stance that taxes for the year 1876 to the amount of $106.54 were levied and assessed on the capital stock of the gas company, which are delinquent and have never been paid, and that the same should be set off against claim of the plaintiff below.

By the demurrer to this defense of the answer, the question is raised whether, prior to the act of March 1st, 1879, providing "a system of revenue," and tak-ing effect September 1st, 1879, delinquent taxes due from the plaintiff below to the city are a proper sub-ject of set-off? Whether they would be under that act is a question that is not now presented, and which we do not decide.

Section 104 of the code of civil procedure (Gen. Stat., 541) provides as to set-off, that it " can only be pleaded in an action founded on contract, and must be a cause of action arising upon contract, or ascertained by the decision of the court." Now taxes neither arise upon contract either express or implied, nor is the amount thereof determinable by the judgment of a court. They are the forcible, and, within constitutional limits, the arbitrary exactions of the government for its support and use, taken from the substance of the people, "and to the making or enforcing of which their assent indi-

vidually is not required." *Pierce v. City of Boston*, 3 Met., 520. *Carondelet v. Picot*, 38 Mo., 125. And of the enforcement of payment, Mr. Cooley says:. "Taxes are not debts in the ordinary sense of that term, and their collection will, in general, depend on the remedies given by statute for their enforcement. When no remedy is specially provided, a remedy by suit may fairly be implied, but when one is given which does not embrace an action at law, a tax cannot in general be recovered in a common law action as a debt." Cooley on Taxation, 13. And in *Carondelet v. Picot*, 38 Mo., 125, the court say: "Unless the power is specifically delegated or expressed, no right of action exists for taxes, and they cannot be turned into judgments. Both the state and municipal corporations have a much better and more expeditious remedy. They have the right of summary process to enforce collection by levy and sale;' and when this power exists, complete and ample as it most assuredly is, it would be monstrous, without plain and express authority to that effect, to say that they could abandon at pleasure the usual and simple manner of making collections, and subject the delinquent taxpayer to all the embarrassments, vexations, and costs of a legal proceeding." See also on this point, *Turnpike Co. v. Gould*, 6 Mass., 40. *Packard v. Tisdale*, 50 Me., 376. *Perry v. Washburn*, 20 Cal., 318. *Richards v. Stogsdell*, 21 Ind., 74. *Lane Co. v. Oregon*, 7 Wall., 71. *Shaw v. Pickett*, 26 Vt., 486.

In *Turnpike Co. v. Gould*, this language is used: "When we find a power in the plaintiff to make the assessments, they can enforce the payment in the method directed by the statute, and not otherwise; and that method is by the sale of the delinquent shares. This rule applies to all taxes, public and private. No action can be maintained to compel the payment of

state, county, or town taxes, except in the particular cases in which an action is given by statute." Such being the general rule when there is an efficient and summary mode specially provided for their collection, as has heretofore been the case respecting all taxes imposed in this state, under the authority thereof, whether general or special, it follows that the demurrer to this branch of the answer was properly sustained.

It is further contended that the court erred in admitting in evidence the written contract as shown on page thirty-six of the record. This instrument bears date of February 1st, 1877, and is but a slight modification of the then subsisting contract of September 4th, 1873, under which the city was then being supplied with gaslight. By this modification it appears that the amount of each monthly installment payable to the company, thenceforward to August 1st of that year, was reduced from the sum of $500.00 to $291.66. The object in giving this bit of evidence probably was to show the price for the month of June, 1877, for which the action was brought, as this month was within the above modification. And for this purpose it was clearly admissible, although under the admissions of 'the answer it was not really necessary to introduce any testimony on this point. The answer, after setting out pretty fully the contract of September 4th, 1873, and the modification thereto of February 1st, 1877, concludes in these words: "That the said instrument of September 4th, 1873, and the modifications aforesaid, are the same contracts mentioned in plaintiff's petition as the basis of its alleged cause of action herein." In this particular there was no error committed.

It is urged, however, as against *any* recovery by the company under these contracts, that they contain certain illegal provisions respecting the exemption of property from taxation, and the payment of money

out of the sinking fund of the city, devoted by law to another purpose. But even admitting that in these two particulars the city authorities exceeded their powers (which, however, we do not decide), that would be no defense to this action. Under the charter they were authorized to contract for lighting the streets with gas, and to bind the city for the payment of the price agreed upon. In this respect, therefore, the contract was not *ultra vires*, and so long as the city voluntarily received gaslight under its provisions, it cannot resist payment of the agreed price, simply because of these alleged illegal promises as to the particular fund from which the money should be drawn. The consideration for which these promises were made being entirely legal, and the price agreed upon being payable, if not otherwise, from its general fund, these objectionable provisions may, if necessary, be rejected, and the rest of the contract permitted to stand; especially where, as here, the city has received the consideration for which the promises were made. Chitty on Contracts, 574. If the company were resisting a tax levied in violation of this agreement, or if they were endeavoring to compel payment of a gas bill out of the sinking fund, the argument of counsel for the city in this behalf would be entitled to great weight, but under the issues of this case we deem it altogether inapplicable.

Only one point more is it necessary to notice. It is contended that before the city could lawfully have entered into this contract an estimate of the probable expense must have been made, as provided in section *thirty-two* of the act relating to the incorporation of cities of the second class. (Gen. Stat., 151.) But we think otherwise. This section has no application to contracts of this description, but to those respecting streets, bridges, or other work or improvement to be

made for and owned by the city. Its language on this subject is: "Before the city council shall make any contract for building bridges or side-walks, or for any work on streets, or for any other work or improvements, an estimate of the cost thereof shall be made by the city engineer and submitted to the council, and no contract shall be entered into for any work or improvement for a price exceeding such estimate," etc. Now, all that was contracted for here was the supplying the city with light, not for the erection of gas works, to be owned and operated by the city. And the contract was made with the company, which had the exclusive right to that business within the city, the only source from which such light could have been obtained. Clearly this section of the statute has no application here, and the argument based upon it falls to the ground.

The sole material error found in this record lies in the exclusion of the partial defense set out in the *fourth* paragraph of the answer, and based upon the notice of the 11th of June to the company to furnish no more gaslight to the city under said contract. For that error, however, the judgment must be reversed, and the cause remanded to the court below, to be proceeded with according to the views expressed in this opinion.

REVERSED AND REMANDED.