IN RE LIFE ASSOCIATION OF AMERICA; N. C. HUDSON,
Appellant.

March 28, 1882.

1. The state's demand for taxes is not barred by section 6045 of the statute, and an order made thereunder limiting the time of filing claims, cannot be interposed against the payment of such a demand out of a fund in court.

2. The superintendent of insurance must, under the statute, pay taxes upon land of a dissolved insurance company out of funds of the company in his hands.

3. Taxes upon real estate are, under the statute, a personal charge against the owner, and his personal property may be subjected to the payment thereof.

4. If taxes are a lien upon land sold under a mortgage, the collector is not affected by any equities between the parties to the sale, nor by any statements made thereat by the trustee.

5. The collector is not restricted to a proceeding against the land, but may proceed against the personalty of the person who was owner of the land when the taxes became a lien thereon.

6. A suit instituted by the collector to enforce the state's lien for taxes against the land does not estop him from pursuing any other remedy given by statute for the collection of taxes.

7. A petition by a tax collector to subject funds in the hands of a receiver to the payment of taxes, will not avail to subject the fund to the payment of taxes not due when the petition was filed.

APPEAL from the St. Louis Circuit Court, ADAMS, J.
*Reversed and remanded.*

GEORGE W. TAUSSIG and JAMES TAUSSIG, for the appellant: The petitioner claims payment of taxes out of the money in the hands of the superintendent of insurance, in charge of the Life Association of America, on two grounds: *First*, that section 6047 of the Revised Statutes of Missouri expressly provides for and requires such payment. — *In re Receivership*, 3 Abb. App. Dec. 239; *Phillips* v. *Rowse*, 49 Mo. 586. *Second*, that under our statutes, the personal assets of the Life Association are subject to levy for such taxes, and that these assets being now *in custodia*

*legis,* the court should apply them to the satisfaction of the taxes. — Rev. Stats., sects. 6754, 6826; Burr. on Tax. 257; 4 Cranch, 412; 9 Cranch, 70; 6 Wheat. 119; 12 Ala. 617; 14 Ind. 466; *In re Henley,* 9 L. R. (Ch. Div.) 469. *Third,* That at common law, independent of statutory provisions, the collector has a right to have his petition granted.— 3 Cent. L. J. 715, 716.

W. J. RELFE and W. L. SCOTT, *contra:* .The claim for these taxes, including what is strictly state taxes, is barred, by virtue of section 6045, inasmuch as the claim is, for the first time, asserted after the expiration of the time prescribed under the decrees limiting the time for filing claims.— *School District* v. *Gorges,* 50 Mo. 194; *Abernathy* v. *Dennis,* 49 Mo. 468; *Riley* v. *Choquitti,* 18 Mo. 220; *Armstrong* v. *Channin,* 66 Pa. St. 221; *St. Charles* v. *Powell,* 22 Mo. 525. That the foundation of this claim against the personalty for unpaid taxes on realty is that of personal liability, see Burroughs on Taxation, page 4, section 7. As respects the claims for the taxes of 1879, the same is barred, by reason of the proceeding instituted by the collector, and still pending in the circuit court, to subject the real estate to their payment. The remedy by the proceeding *in rem* is an exclusive one. It is prescribed by statute, and is based upon the statutory conditions to be found in sections 6825, 6836, Revised Statutes 1879. The land being "delinquent," the statute is mandatory upon the collector to proceed *in rem.* Sect. 6825. To permit him to pursue both remedies at the same time would be oppressive to the subject, and is averse to the spirit of our laws and institutions. — *Camden* v. *Allen,* 2 Dutch. 400. To recognize his right to postpone the proceeding *in rem* until the legislation in respect to the personalty is ended, would be against the policy of the law which contemplates and provides for the speedy and certain collection of the taxes in the subjection of the land itself to their payments. — Rev. Stats., sect. 6841. No remedies can be adopted except those prescribed

by statute. The collection of taxes is a matter solely of statutory provision and regulation, and no means can be resorted to to coerce their payment, other than those expressly provided by the statute. — *Carondelet* v. *Picot*, 38 Mo. 125. No doctrine of the law is more clearly recognized or more firmly established than that where the statute prescribes a particular remedy all other remedies are excluded. — *The State* v. *Lyman*, 1 Mason, 481; *Girding* v. *Tewksberry*, 3 Mass. 307; *Smith* v. *Drew*, 5 Mass. 504; *Bigloe* v. *Cam. Turn. Co.*, 7 Mass. 202; *Calklin* v. *Baldwin*, 4 Wend. 667; 10 Mass. 378. Compensation must be sought in the way pointed out by the statute, and none other. — *Lebanon* v. *Olcot*, 1 N. H. 339; *Roys* v. *Bradshaw*, 20 Johns. 735; *Calklin* v. *Baldwin*, 4 Wend. 667; 10 Mass. 378. This doctrine has been directly applied to the matter of the collection of taxes; and the right to bring an action for their recovery or to pursue any other remedies than those provided by the statute is squarely denied.— *Camden* v. *Allen*, 2 Dutch. 398; *Pearce* v. *City of Boston*, 3 Metc. 520; *Lance County* v. *Oregon*, 7 Wall. 71; *Shaw* v. *Picket*, 26 Vt. 482.

THOMPSON, J., delivered the opinion of the court.

This is an intervening petition of the tax collector of the city of St. Louis, in a proceeding wherein the Life Association of America is being wound up by the superintendent of the insurance department of the state, under the control of the circuit court. The petition, together with an agreed statement of facts and certain extracts from the record of the proceeding to wind up the Life Association, shows that the Life Association was formerly the owner in fee of a certain tract of ground and building thereon in St. Louis, known as the Masonic Hall; that while the building was thus owned by the insurance company, taxes were assessed against it for the years 1879 and 1880; that on November 10, 1879, a decree was made

by the circuit court dissolving the insurance company, and that thereupon this real estate, together with the other assets of the company, passed into the hands of the superintendent of the insurance department, and title thereto in fee simple vested in him and his successor in office, as provided in section 6043 of the Revised Statutes ; that while the title to this real estate was thus vested in the superintendent of the insurance department, namely, on August 1, 1880, there were further assessed against it taxes for state, city, and school purposes for the year 1881 ; that this intervening petition was filed on May 16, 1881, and that these last taxes were not enforceable until October 1, 1881, as provided in section 6754 of the Revised Statutes ; so that these last taxes were not due at the time of the filing of the petition.

It also appears that the Life Association of America, and afterwards the superintendent of the insurance department, as already stated, held the title to the property, subject to a deed of trust, made to secure certain bonds and coupons ; that on March 9, 1881, this title was conveyed by the superintendent of the insurance department by a quit-claim deed executed under the orders and with the approval of the circuit court having charge of the winding-up proceeding against the insurance company, to George W. Taussig, for the consideration of $500 ; that thereafter, on April 28, 1881, the property was sold under the deed of trust at public auction to Meyer A. Rosenblatt, for $71,200 ; that there remain unpaid of the indebtedness secured by the deed of trust, about $75,000 ; that the grantor in said deed of trust, the Masonic Hall Association, from which the Life Association of America derived its title, has been since 1873, and still is, insolvent ; that Mr. Rosenblatt purchased the property on behalf of himself and the other bondholders, and that he now holds and owns all of the bonds and coupons secured by the deed of trust ; that at the sale under

the deed of trust it was announced by the auctioneer, and by an attorney for some of the bondholders, that the purchaser of the property would take it subject to the taxes for the years 1879 and 1880.

It is also admitted that the Life Association of America was the owner and in possession of the property in question from November, 1873, continuously until November 10, 1879, when it was dissolved; that during this period it collected all the rents of the same, paid all taxes assessed against the same until those assessed for the year 1879, and also paid the interest coupons secured by the deed of trust in question, down to and including those which fell due on June 1, 1879; that the total rents and income from the property were not sufficient at any time to pay the expense of keeping it in good repair, of running the building, and of paying the interest coupons secured by the deed of trust in question; but that the rents and income were larger than the amounts disbursed for repairs, for the running of the building, and for taxes; and that the property was not worth, at the time of its purchase by Rosenblatt, the amount of the encumbrance thereon.

It also appears that prior to the sale under the deed of trust, a proceeding was instituted in the circuit court to enforce the state's lien for taxes against the property for the year 1879, as provided for in section 6836, *et sequitur*, of the Revised Statutes, and that this suit was pending at the time of the hearing of this petition in the circuit court.

It is further agreed that the superintendent of the insurance department had a general knowledge of the fact that taxes had been assessed against this real estate, but did not know the exact amount; that he has had at all times since November 10, 1879, and had at the time of the hearing of this petition, in his possession, personal property of the Life Association of America, consisting of money, the proceeds of sales of real estate and collections, free from liens

and not needed for expenses or costs, exceeding in value and amount the sum of $15,000, as the legal successor of the said insurance company.

It further appears that in the proceeding to wind up the Life Association of America, the circuit court, on May 10, 1880, made an order under the authority of section 6045 of the Revised Statutes, limiting the time for the prosecution of claims against the estate of the company to June 30, 1880, and reciting that " all claims, whether based upon policies or otherwise, not presented on the day last aforesaid, shall be barred ; and any creditor neglecting to present his claim within the time so limited shall be debarred of all right to share in the assets of said association ; " that on June 28, 1880, this time was extended to September 4, 1880, the order reciting that " all claims of whatever character, not presented and filed on or before said last-named date shall be barred." It does not appear that any notice, by publication or otherwise, of these two orders was given. It also appears that everything with regard to the presentation and allowance of claims which these two orders required to be done, had been done, and that the commissioner appointed by the court to receive and decide upon claims, under section 6045 of the Revised Statutes, had, prior to May 16, 1881, the day of the filing of this intervening petition, made final report of all matters submitted to him by these orders.

Upon the hearing of this intervening petition, the circuit court made an order dismissing the same without prejudice, and the tax collector has appealed.

1. The first question which we shall consider is, whether the relief asked for in the intervening petition is barred by reason of the fact that the petition was not filed within the time limited by the orders of the court. It is a general rule of law that no statute of limitations runs against the sovereign, unless it is named therein. The maxim of law, *nullum tempus occurrit regi*, has been generally extended in this country so as to mean that rights of a public nature, whether

asserted in the name of the United States, of a state, or of a municipal corporation, are not barred by limitation, by lapse of time, or by the laches of public agents, in the absence of statutes expressly so providing. Our statute relating to the limitation of civil actions expressly provides that " the limitations prescribed in this chapter shall apply to actions brought in the name of the state or for its benefit, in the same manner as to actions by private parties." Rev. Stats., sect. 3253. It is to be noted that this is confined to the limitations prescribed in that particular chapter. But, on the other hand, the article of the revenue law which provides for the enforcement of the state's lien upon land for taxes by suit in the circuit court, recites that " the provisions of section 3253 shall not apply to actions brought by the state under this act." The provision of the chapter relating to insurance, under authority of which the circuit court limited the time for the presentation of claims in this case, is as follows : " The court or judge in or before whom the case is pending, upon the application of said superintendent, shall limit and may extend the time for the presentation of claims against such company, and notice thereof shall be given in such manner as such court or judge shall direct; and any creditor neglecting to present his claim shall be debarred of all right to share in the assets of such company." Rev. Stats., sect. 6045. If this provision is to be construed as a statute of limitations, and considered *in pari materia* with section 3253, then this intervening petition would be barred by reason of not having been presented within the time prescribed by the second order of the circuit court, — that is, if this order was, itself, in compliance with the statute. On the other hand, if, regarding the fact that this claim is for taxes due the state, the statute, so far as it applies to this claim, is to be assimilated in its construction to section 6846, then the order of the court, even if it had been made in strict compliance with the statute, would not be a bar. Section 3253 of the Revised Statutes is

in derogation of the common law, and is not to be extended by construction to cases not embraced in its terms. Besides, it is confined by its terms to the limitations prescribed in the chapter in which it is found. Section 6846, which creates an exception to this section, or which rather places a limitation upon it, is also limited in its terms to suits brought to enforce the state's lien against real estate under the back-tax law. The provisions which we are considering are not goverened by either of these sections, but it is, we think, to be construed in conformity with the general rule of the common law which we have already stated; and under this rule, as we understand it, the demand of the state for taxes levied for public purposes, is never barred by limitation or lapse of time, unless there is a statute so providing.

But there is another consideration. This is not strictly a statute of limitations. If it were, — if it fixed a definite limitation of so many years, or so many days, however short, — the question would present less difficulty; for all persons would be bound to take notice of the period of limitation prescribed. But it does not fix a limitation; it simply empowers the court to fix it, and the court, in doing this, is required to give notice of the time so limited. But in this case it does not appear that such notice was given; the order does not provide for it, and it is, therefore, not in compliance with the statute. It would be going very far to hold that such an order under such a statue is to be interposed as a bar against the state when demanding its revenue out of a fund in the hands of a statutory receiver. We can see that a time would arise in the winding-up proceeding, when even such a claim as this would be barred. This winding-up proceeding, like a proceeding in bankruptcy, is a statute execution; and, after the making of an order of court appropriating the assets in the hands of the superintendent to the payment of particular claims, it might be too late to let in even a demand of the state for taxes, although

the moneys may not, in fact, have been distributed. The case would be analogous to that where a sheriff holds money, the proceeds of the simultaneous levy of several executions in favor of different creditors of equal date, upon the property of a common debtor. Each levy would be an appropriation of the fund *pro tanto*, and the state would not take any portion of it under a distraint against the debtor for taxes ; the principle being that the state has no lien against personalty for taxes unless such a lien is given by statute, and when the state's officer distrains for taxes, he takes the property subject to any existing liens, possessory or otherwise. *Casberd* v. *Attorney-General*, 6 Price, 411 ; *Rex* v. *Humphrey*, McClel. & Y. 173 ; *King* v. *Lee*, 6 Price, 369.

2. This brings us to the substantial question in the case, whether these taxes are payable out of the fund in the hands of the superintendent of the insurance department, or whether the state is to be driven to the enforcement of its lien against the property itself, under the back-tax law. The statute which provides the manner in which the assets of dissolved insurance companies shall be distributed, seems to put the matter at rest. By its terms, " the superintendent of the insurance department, under the direction of the court, shall apply the sums realized from the assets of such dissolved company, *first*, to the payment of the expenses of closing the business and disposing of the assets of such company ; *secondly*, to the payment of all lawful taxes and debts due the state and the United States, and the counties and municipalities of this state." Rev. Stats., sect. 6047. This statute is mandatory ; the words " all lawful taxes " are broad enough to include every species of taxes lawfully assessed and levied, and must have been so intended. Unless, then, there is something in the nature of the tax which the collector here seeks to have paid out of the fund in the hands of the superintendent, or something peculiar in the circumstances of this case, which takes it out of the

terms or meaning of the statute, the circuit court erred in dismissing the petition.

It has been suggested that a land tax is strictly a charge *in rem* against the land, and not a personal charge against the owner, and that the only object which our statute has in view in requiring the collector to notify the owner to pay it, and in notifying him of the commencement of a suit to enforce it under the back-tax law, is to give him an opportunity to come forward and redeem the land of the charge by paying it. Section 6754 of the Revised Statutes proves that this is not so. It is in the following language: " The collectors shall diligently endeavor, and use all lawful means, to collect all taxes which they are required to collect in their respective counties, and to that end they shall have the power to seize and sell the goods and chattels of the person liable for taxes, in the same manner as goods and chattels are, or may be, required to be seized and sold under execution issued on judgments at law ; and no property whatever shall be exempt from seizure and sale for taxes due on lands or personal property ; provided that no such seizure or sale for taxes shall be made until after the first day of October of each year, and the collector shall not receive a credit for delinquent taxes until he shall have made affidavit that he has been unable to find any personal property out of which to make the taxes in each case so returned delinquent ; but no such seizure and sale of goods shall be made until the collector has made demand for the payment of the tax, either in person or by deputy, to the party liable to pay the same, or by leaving a written or printed notice at his place of abode for that purpose, with some member of the family over fifteen years of age. Such seizure may be made at any time after the first day of October, and before said taxes become delinquent, or after they become delinquent.'' The right thus given to distrain personal property for " all taxes,'' as well before as after they have become delinquent, shows that all taxes are personal charges against the owner

of the property in respect of which they are levied. It is true that a tax is not a mere debt in the sense that a common-law action will lie for its recovery. It is an impost levied upon the citizen, *in invitum;* and, for coercing its payment the state is limited to the modes pointed out by statute. *Carondelet* v. *Picot,* 38 Mo. 125. But it does not follow from this that the state is not at liberty to pursue all the statutory modes of collecting its taxes, just as a private creditor is allowed to pursue all his concurrent remedies against his debtor. This is especially so under a statute like the above, which commands the collector " to use all lawful means to collect all taxes." Such a statutory command at least justifies him in proceeding in the most direct and least expensive way.

Nor do we see anything in the circumstances of this case which should take it out of the statute. It is attempted to thrust into it a consideration of the equities of private parties. It is said that Mr. Rosenblatt bought the property subject to those taxes ; that it was so announced and understood at the sale. This is true. He bought it subject to those burdens which the law had put upon it. Those burdens were matters of public law and public knowledge ; and no statements made by the auctioneer employed by a private party to cry a sale, could bind the state of Missouri, or make those burdens any less or any greater than the law had made them. And those burdens were simply these : that the state had a lien upon the land for the taxes assessed against it, and that the state also had the power to collect those taxes out of the personal assets of the tax debtor by distraint, or, in this particular case, by requiring payment of them out of the personal assets of such debtor in the hands of the superintendent of the insurance department, under the terms of section 6047 of the Revised Statutes. Nothing which could have been said, done, or agreed by or between private parties at any sale of this property, could, upon any principle, deprive the state of its liberty to pur-

sue any or all of its remedies for the collection of its taxes. If Mr. Rosenblatt had paid these taxes subsequently to his purchase of the property, and were here petitioning for reimbursement, then, upon a rule well settled in this state, he could not have the relief asked for. *Tanner* v. *Taussig*, 11 Mo. App. 534, and cases there cited. But this is not Mr. Rosenblatt's petition. It is the petition of the collector of the public revenue; and it would be a confusion of legal principles, and an ignoring of the statutes quoted, to make the case turn upon a consideration of his equities, or of the equities of the creditors of the insurance company.

But if we could consider these equities in this case, then I should not be at all clear that the petition was rightly dismissed. Mr. Rosenblatt, at the time of his purchase, did not own all of the bonds, though he purchased for all of the bondholders. They have suffered a very considerable loss — how much does not appear; but it is distinctly admitted that the income from the property was never sufficient to pay its running expenses, the taxes assessed against it, and the interest on the bonds secured by the deed of trust under which he bought it. The Masonic Hall Association, which made the deed of trust, is wholly insolvent. The Life Association of America bought the property at a trustees' sale under a second mortgage, and did not, therefore, assume payment of the debt secured by this deed of trust, or make itself personally liable therefor; so that the bondholders cannot come into the proceeding to wind up the Life Association, and get a dividend with its general creditors, if any such dividend should be paid. It is not clear, therefore, that these bondholders do not stand in as good a position in respect of their equities as the creditors of the Life Association.

The fact that the collector has instituted a suit under the back-tax law, to enforce the lien of the state for the taxes of 1879 against this property, does not estop him from pursuing any other remedy which the law gives him for the

collection of the taxes for that year. The state is certainly not in a worse position than a private creditor would be; and it is well settled that where a private creditor has several remedies against different persons or securities, he may pursue all of them concurrently. *The State* v. *Dean*, 40 Mo. 464–468; *The State* v. *Doan*, 39 Mo. 44; *The State* v. *Drury*, 36 Mo. 281. When he has obtained satisfaction in one proceeding, of course the others must be dismissed.

We think, however, that the collector is not entitled to have the taxes of 1881, paid out of the fund in the hands of the superintendent of the insurance department. His petition, we think, is analogous to a proceeding by him to distrain personalty. If the property of the Life Association of America had not been impounded in the hands of the superintendent of the insurance department by orders of the court, he would have had the right to distrain personalty of the company. But he could not have exercised this right until October 1, 1881. His petition, so far as it asks payment of these taxes, is, therefore, a proceeding to procure payment of a tax not due at the time it was filed. The statute, it will be observed, requires the superintendent of the insurance department to pay " all lawful taxes and debts due the state." An ordinary debt, contracted and maturing, might, perhaps, be considered as " due," in the sense of the statute; but, as already pointed out, a tax is not an ordinary debt; it is an impost or charge against the citizen, and, until the time arrives when the law says it is payable, there is, in fact, no tax, but only a possible or probable tax. The rule in ordinary cases is, that the plaintiff can only recover on such right as he had at the time of the commencement of his action. *Weinwick* v. *Bender*, 33 Mo. 80; *Dowell* v. *Morgan*, 33 Mo. 555. We perceive no reason why this rule should not apply to this case.

Our conclusion, therefore, is, that the judgment of the

circuit court be reversed, and that the proceeding be re-
manded with directions to enter a decretal order for the pay-
ment of the taxes of 1879 and 1880, out of the fund in the
hands of the superintendent, and dismissing the petition in
so far as it claims payment of the taxes of 1881.   Costs of
the petition should be paid out of the fund in the hands of
the superintendent.    It is · so ordered.    All the judges
concur.

THOMPSON, J., delivered the supplemental opinion of the
court.

Since the filing of our opinion in this case, the respon-
dent has presented an affidavit showing that, pending this ap-
peal, the proceedings *in rem*, mentioned in the opinion,
against the real estate therein mentioned, brought to en-
force the taxes of 1879, thereon, have resulted in a sale,
and that the proceeds of such sale are in the hands of the
tax collector.    The respondent therefore moves the court
to modify the judgment so as simply to reverse the judg-
ment of the circuit court and remand the cause without
directions.    The respondent supposes that this will be neces-
sary to enable the circuit court to take into consideration
the change in the rights of the parties resulting from the
circumstance mentioned.    We think it unnecessary to make
such an order.    We act upon the record before us ; and it
would be inconvenient, and, perhaps, in excess of our juris-
diction, for us to hear affidavits or other original evidence,
of matters which are in the nature of a plea *puis darrein
continuance*.    The circuit court, considering that our judg-
ment is limited to the facts disclosed by the record, will
understand that our mandate is not of such an inflexible
nature as will prevent it, in such a case, from hearing
evidence of matters arising subsequently to the filing of
the petition, which may have substantially changed the
rights of the parties, or rendered the execution of our
mandate impossible or ·improper.

The appellant has also asked us to modify our direction to the circuit court so as to direct that court to dismiss that part of the petition which relates to the taxes of 1881, without prejudice to the petitioner. We see no reason why this should not be done, and it is so ordered. Judge BAKEWELL concurs; Judge LEWIS is absent.