BLEVINS *et al.* v. SMITH, *Appellant.*

DIVISION ONE.

1. **Covenant of Warranty :** DOWER : NOMINAL DAMAGES. Only nominal damages are recoverable for breach of warranty of title by reason of an outstanding inchoate right of dower.

2. **Back Taxes :** DOWER. A sale under a judgment for delinquent taxes does not bar a widow's right of dower where she was not made a party to the tax suit, and this is true although such right of dower is only inchoate.

*Appeal from Johnson Circuit Court.*—HON. C. W. SLOAN, Judge.

REVERSED AND REMANDED.

*S. P. Sparks* for appellant.

(1) The existence of an inchoate right of dower in Mrs. Collier, at the time appellant entered into the covenants, at most constituted only a technical breach of the covenants against incumbrances, and only nominal damages were recoverable. Sedgwick on Damages [4 Ed.] 195, note ; 4 Kent, Com., art. 4 ; Rawle on Cov. for Title, 541, 571 ; *Collier v. Gamble,* 10 Mo. 466 ; *Walker v. Deaver,* 79 Mo. 664 ; *Priest v. Deaver,* 22 Mo. App. 376 ; *Dickson v. Desire,* 23 Mo. 151 ; *Wyatt v. Dunn,* 93 Mo. 459 ; *Runnells v. Weber,* 59 Me. 488 ; 2 Suth. on Dam. [1 Ed.] p. 327 ; *Hazelrig v. Huston,* 18 Ind. 481 ; *Lewis v. Lewis,* 5 Rich. L. 12 ; *Nyce v. Obertz,* 17 Ohio, 71 ; *Bender v. Fromberger,* 4 Dall. (Pa.) 440 ; *Durrett v. Piper,* 58 Mo. 551. *First.* The only covenant ( if any were ) broken by appellant in his deed was that against incumbrances done or suffered by him, or those under whom he claimed, implied in the words "grant, bargain and sell." *Durrett v. Piper, supra ;*

R. S. 1879, sec. 675. *Second.* The existence of this inchoate right of dower was not an act "done or suffered by appellant, nor those under whom he claimed." R. S. 1879, sec. 675; *Walker v. Deaver*, 79 Mo. 664; 4 Kent, Com., sec. 440; *Armstrong v. Darby*, 29 Mo.; *Bender v. Formberger, supra;* Rawle, Cov. Title, pp. 541, 575; *Alexander v. Schrieber*, 10 Mo. 460. *Third.* But conceding that the inchoate right of dower of Mrs. Collier constituted an incumbrance done or suffered by defendant or those under whom he claims—while this covenant was broken as soon as made, for which an action would instantly lie until there had not been an actual loss, eviction or its equivalent consequent thereon, and only nominal damages could be recovered. *Walker v. Deaver, supra; Hunt v. Marsh*, 80 Mo. 396; *Morgan v. Railroad*, 63 Mo. 129; *Matheny v. Mason*, 73 Mo. 677. *Fourth.* Mrs. Collier's inchoate right of dower was not title paramount capable of enforcement; it was merely contingent, and possessed no value—a mere possibility—an expectancy. *Durrett v. Piper, supra.* *Fifth.* The covenant sued on was not that the title conveyed should be merchantable, *i. e.*, such as might be acceptable to a purchaser, but that plaintiff should not be damaged in the possession by being evicted or disturbed. Her inability to find a purchaser who would buy the land with this inchoate right of dower outstanding was not a substantial breach of this covenant, and nominal damages only are recoverable; for only on the dower interest becoming consummate by the death of the husband can any paramount title arise, or any eviction become possible. By what standard can the right of an inchoate right of dower be measured? *Willetts v. Burgess*, 34 Ill. 494. *Sixth.* When a grantee seeks to recover damages for a breach of the covenant against incumbrances, it devolves on him to show that the incumbrance discharged was such that the grantor was bound to pay off. *Bland v. Thomas*, 3 S. W. Rep. (Ky.) 595. *Seventh.* At the time of the

Blevins v. Smith.

institution of this suit, plaintiff had parted with her title and possession, and she could not maintain this action on covenants which run with the land that had inured to another by virtue of her deed. *Chambers v. Smith*, 23 Mo. 174. (2) The sale for taxes barred the inchoate right of dower of Mrs. Collier. *First*. It was within the power of the legislature to pass laws which would defeat an inchoate right of dower. Cooley on Const. Lim., p. 445; *Morrison v. Rice*, 29 N. W. Rep. (Mich.) 168; Tiedeman, Lim. Police Powers, sec. 117, pp. 341, 351. *Second*. The proceeding to enforce taxes by the state is always analogous to the exercise by it of the right of eminent domain, which it has always been held bars dower. *Brown v. Austin*, 41 Vt. 262; Tiedeman, Real Prop., sec. 132; *Robbins v. Barrow*, 32 Mich. 36; 1 Wash. Real Prop. [Ed. 1868] 220; *Moore v. City*, 8 N. Y. App. 110; *Finch v. Brown*, 3 Gilm. 448; *Jones v. Devore*, 8 Ohio St. 430. *Third*. The supreme court of Missouri has decided that a wife is not a necessary party to a partition proceeding when the husband is the owner, and that, notwithstanding she is not a party, her inchoate right of dower is barred. *Lee v. Lindell*, 22 Mo. 202. *Fourth*. A tax sale is clearly not within the saving provisions of section 2197. *Fifth*. The amount paid by Mrs. Blevins for attorneys' fees in negotiating the purchase was not a proper element of the damages. No suit had been brought, and the court erred in admitting evidence to establish it, and refusing appellant's instruction to the court sitting as a jury to disregard it in arriving at their verdict, numbered 3.

*A. B. Logan* and *W. W. Wood* for respondents.

(1) When respondent discharged the incumbrance created by the inchoate right of dower, the breach of warranty became substantial and she was entitled to recover the reasonable amount paid. *Durrett v. Piper*,

58 Mo. 551 ; *Ward v. Ashbrook*, 78 Mo. 515; 1 Scribner on Dower, secs. 2, 4 ; *Prescott v. Truman*, 4 Mass. 627 ; *Shearer v. Ranger*, 22 Pick. 447 ; *Bigelow v. Hubbard*, 97 Mass. 195 ; *Harrington v. Murphy*, 109 Mass. 299. (2) The existence of the inchoate right of dower is an incumbrance covenanted against by the use of the words "grant, bargain and sell." *Ward v. Ashbrook*, 78 Mo. 515 ; *Williamson v. Hall*, 62 Mo. 405. It will be noted that the authorities cited by appellant are all cases arising under the statute, as it existed prior to the revision of 1879. The statute was amended, however, in 1879, so as to make the grantor liable for incumbrances "done or suffered" by any person under whom he claims.   Rev. Code, 1845, p. 221, sec. 24 ; R. S. 1855, chap. 32, sec. 14 ; G. S. 1865, p. 444, sec. 8 ; R. S. 1879, sec. 675.   (3) The real point at issue, as we conceive it, is whether the mere fact of the incumbrance not being capable of present enforcement would debar the plaintiff from removing it, and recovering the reasonable amount paid.   That it would not, is, we think, abundantly established by the authorities cited.   Sedgwick on Dam. 195 [4 Ed.] top and note ; *Collier v. Gamble*, 10 Mo. 472 ; *Dickson v. Desire*, 23 Mo. 163. (4) Under a strict covenant of seizin it is necessary to prove an eviction, but under the covenant of indefeasible seizin or the covenant against incumbrances implied by the statute as amended in 1879, it is not necessary to prove an eviction.   It is only necessary to prove that the estate conveyed has been defeated, or the right to defeat it has been extinguished, or the incumbrance removed.   *Collier v. Gamble*, 10 Mo. 467 ; *Shelton v. Pease*, 10 Mo. 473 ; *Mosely v. Hunter*, 15 Mo. 322 ; *Dickson v. Desire*, 23 Mo. 151 ; *Walker v. Deaver*, 79 Mo. 664.   (5) The damages for the breach of a covenant against incumbrances depends upon the value of the incumbrance without reference to the value of the land or the purchase money.   The covenantee is entitled

to recover what he has paid to extinguish the incumbrance if he has paid a reasonable and fair price. *St. Louis v. Bissell*, 46 Mo. 157; *Kellogg v. Molin*, 62 Mo. 429; *Henderson v. Henderson*, 13 Mo. 151. (6) The fact that plaintiff had parted with her title, at the time of the commencement of her suit, is immaterial as affecting her right to recover on the covenants. She was the owner at the time she removed the incumbrance. (7) The tax sale did not convey the dower. There are two theories upon that subject. The one is, that it is a proceeding against the land itself, and has nothing to do with the previous chain of title; that it is a breaking up of all previous titles. *Jones v. Devore*, 8 Oh. St. 431. The other, that it is a derivative title, the purchaser taking only such title as the party to the proceedings had. This court in construing the statutes has adopted the latter theory. *Gitchell v. Kreidler*, 84 Mo. 472; *Granby v. Casey*, 93 Mo. 595. Under a statute in almost the precise words of section 2197, Revised Statutes, 1879, it has been held by two eminent text-writers, that the laches of the husband in permitting his land to sell for taxes would not debar the wife of her dower. Black. on Tax Titles [2 Ed.] 549; Scrib. on Dower [2 Ed.] 809, 820.

GANTT, P. J.—This is an action on a covenant of warranty, made by appellant to the respondent, Mrs. Sarah C. Blevins. The land conveyed is the south half of the southeast quarter, section 6, township 46, range 25, Johnson county, Missouri.

The evidence showed title in appellant Smith, at the date of conveyance to respondent, except an outstanding inchoate right of dower in Mrs. Mary E. Collier, the wife of Daniel Collier. Appellant deduced his title from Daniel Collier, by virtue of a tax sale and deed under the act of 1877. It was admitted that Daniel Collier was still alive at the time of the commencement of the suit. After respondent obtained her

deed from appellant, she attempted to mortgage the land and failed because of this outstanding inchoate dower right in Mrs. Collier. She thereupon purchased this right for $150, and brought this suit against appellant for that amount.

Appellant assigns two grounds for reversal. One that the court erred in permitting respondent to recover more than nominal damages for the breach of the covenant by reason of the inchoate dower of Mrs. Collier remaining outstanding, and, secondly, that the court erred in not holding that the tax sale and deed conveyed the land absolutely, and by it Mrs. Collier's inchoate right of dower was entirely barred, and, of course, could constitute no incumbrance.

We all agree that the first contention of appellant must be sustained. While an inchoate right of dower is an incumbrance, as it is a contingency founded upon a contingency, it is not susceptible of computation by any definite rule ; hence the practice has been adopted in this state to allow only nominal damages until the dower becomes consummate. *Walker v. Deaver*, 79 Mo. 664.

II. In regard to the second assignment, we think the court committed no error in holding that the tax proceedings did not divest Mrs. Collier's dower right. We shall not attempt to discuss the power of the legislature to collect taxes. We think it sufficient for the case in hand to ascertain, if we can, what the legislature has determined shall be the policy of the state.

In the first place, we have by statute adopted the common law in regard to dower. Lord COKE says : " There be three things highly favored in law, *life*, *liberty* and *dower*." Chief Justice McKEAN, in *Kennedy v. Nedrow*, 1 Dallas, 438, asserts that " dower is a legal, an equitable and moral right. It is favored in a high degree by the law, and next to life and liberty held sacred."

Strong as these terms are, they are strengthened by our statute. Section 4525. "No act, deed or conveyance executed or performed by the husband without the assent of the wife, evidenced by her acknowledgment thereof, in the manner required by law to¦ pass the estate of married women, and no judgment or decree confessed by or recovered against him, and no laches, default, covin or crime of the husband, shall prejudice the right and interest of the wife, provided in the foregoing sections of this chapter," that is to say, the sections securing the widow her common-law and statutory dower. Now at common law, and by our statute reaffirming it, "the right of dower attaches whenever there is a seizin by the husband, during the marriage, of an estate of inheritance, and, unless it is relinquished by the wife in the manner prescribed by law, it becomes absolute at the husband's death."

"It is a right in law fixed from the moment the facts of marriage and seizin concur, and becomes a title paramount to that of any person claiming under the husband by subsequent act." *Grady v. McCorkle*, 57 Mo. 172. This then is *the character of the estate* that is to be divested by this *new* construction of the statute.

It is conceded that our statute requires "the *owner*" to be made a party before his or her interest in the lands can be affected by a tax proceeding under our act of 1877, and this section has been uniformly construed, so that *cestuis que trust*, mortgagees, remaindermen and incumbrancers, who are not made parties, are not affected by these suits. *Stafford v. Fizer*, 82 Mo. 393; *Corrigan v. Bell*, 73 Mo. 53; *Graves v. Ewart*, 99 Mo. 13. No lawyer will question that inchoate dower is an incumbrance. But it is sought to sustain this new doctrine on the ground that our tax proceedings, beginning with the assessment, *is a proceeding strictly* "*in rem*," and we may remark here, that, only by *sustaining* this position, can this new rule be maintained.

Beginning with *Abbott v. Lindenbower*, 42 Mo. 162, under a statute requiring the lands in all cases to be assessed to the person appearing to be the owner at the time of assessment, this court said: "It is unnecessary for us to say further here, what might be the effect of this last clause in any case, *but we may* go so far as to declare now that an assessment in the name of a person who neither was nor ever had been the owner of the property would be an utterly void assessment." Our present statute requires the land to be listed and *assessed in the name of the owner*, if known. Under this statute in *Gitchell v. Kreidler*, 84 Mo. 472, Judge BLACK, speaking for the whole court, says: "While the judgment is against the property and not personal, still *the tax is assessed against the owner*, if known. The law *looks to him* for payment of the tax. * * * Such a proceeding cannot be said to be strictly *in rem*." Blackwell on Tax Titles, 630.

It will serve no good purpose to cite authorities to the same effect. This has been the accepted construction of our tax laws for many years. Were it a proceeding strictly "*in rem*," there would be no such thing as collecting the tax on real estate out of personal property, which it is conceded may be done. Indeed, the whole system is based on the idea that *it is the duty* of the husband to pay the taxes on his land. And a failure to pay the taxes is *a default* on his part. The wife is under no obligation to pay the tax. She does not own the fee; she does not reap the usufruct; certainly no system based upon justice would exact of her a tribute on property she might never enjoy, and rob her of her dower for failure to pay a tax she did not owe. If then taxes become delinquent, whose default is it? Not the wife's, certainly.

But it is said, that because there can be no personal judgment for taxes, therefore, section 2197, Revised Statutes, 1879 (R. S. 1889, sec. 4525), cannot be invoked. It would be difficult to conceive of a statute that would

protect a wife's dower if this is not sufficient. But we think this construction of this section too narrow. The injury is not confined to "judgments." The statute says in addition to "judgments or decrees, confessed or suffered," "*no laches, default, covin or crime* of the husband *shall prejudice* the rights of the wife." Is it not laches in a citizen to neglect or refuse to pay his taxes? Is not the word "delinquent," used throughout the statute, a synonym for laches and default? And could there be a sale of the land and a divestiture of the wife's dower but for this delinquency on his part? The proposition is too clear for argument.

But, if it is held that this section does not protect the wife's dower against the laches and default of the husband, we will have an anomalous state of affairs. A husband cannot, by deed or mortgage, the most solemn and praiseworthy, for the most valuable consideration, alien or destroy her dower right. No judgment against him, willing or unwilling, can affect her dower ; no fraud, covin or crime, and yet he can suffer this new "*fine and recovery*," and successfully bar her dower, by simply refusing to pay his taxes and let the land sell, and thus a result is reached, by this simple device, that could not be compassed by the most skilful conveyancer. We cannot believe the legislature intended such result.

On the contrary, the whole scope of the tax act clearly shows that the tax law of 1877 was designed to furnish a method for collecting taxes, in which notice was given to the delinquent of the amount of his taxes, and a day in court, if erroneous, to show the error. When the judgment is entered, an execution issues, just as on other judgments, and it is intended to convey the *right, title and interest of the defendant who owned* the land, and whose duty it was to pay the taxes. Says Judge BLACK: "We have repeatedly held that the purchaser at these sales acquires, and *acquires only, the title and interest of the parties who*

*are made defendants.*" *Graves v. Ewart,* 99 Mo. 13; *Powell v. Greenstreet,* 95 Mo. 14.

An ordinary execution sale conveys to the purchaser all the right, title and interest of the defendant in execution, but it has no effect upon the inchoate dower of the wife.    It was clearly the intention of the legislature to give the same effect to a tax deed, under regular and valid proceedings, that a deed under a general judgment would have ; "no more, no less "   "A tax title is a derivative title." *Gitchell v. Kreidler,* 84 Mo. 477.   Says Judge BLACK again :   "It must be taken as settled law that purchasers at these sheriff's sales, made on executions in tax suits, acquire *only the right, title and interest of the defendant in the tax suits.*" *Powell v. Greenstreet,* 95 Mo. 13 ; *Evans v. Robberson,* 92 Mo. 192.

No inconvenience has been felt in Missouri because in ordinary execution sales the wife's inchoate dower was not conveyed.   Creditors and purchasers know her interest is fixed, and all business transactions are based upon that understanding.   The state has adopted a most stringent policy in passing the fee-simple estate to the tax purchasers for the insignificant sum of the tax ; a bagatelle, usually, compared to the value of the lands sold.   While the state has a right to its revenue, no reason appears why it should take the dower of the unoffending wife and vest it in the tax speculator, thus giving him a vantage over all creditors and purchasers at all other execution sales.

We do not so read the statute.   We regard the dower right as of *inestimable value* to the homes of this state.   The trend of public opinion is rather to enlarge, as our homestead laws clearly indicate, than to cut off this sustenance of the widow.   Instead of being a "shadow" it has proved a "pearl of great price" in thousands of ruined homes.   Between the tax speculator and the defenseless widow, section 4525 of our

statute of 1889 stands as a monument to the wisdom
and humanity of our commonwealth.

Judge MACFARLANE concurs in this opinion. Judge
THOMAS files his separate opinion, holding a different
view.

### SEPARATE OPINION.

THOMAS, J.—Daniel Collier owned the south one-
half of the southeast quarter of section 6, township 46,
range 25, west, in Johnson county, Missouri, and, at the
time he so owned this land, a suit was instituted against
him for taxes due thereon, which culminated in a judg-
ment and sale of the land. The sale occurred on the
eighteenth day of February, 1880, and A. H. Tuttle was
the purchaser. The sheriff executed the proper deed for
the land to Tuttle under this sale. By a succession of con-
veyances the defendant acquired all the title to this
property that Tuttle acquired by virtue of the tax deed.

On the twelfth day of September, 1882, defendant
sold the land to Sarah C. Blevins for a consideration of
$1,000, and gave her a warranty deed therefor, by
which he covenanted with said Sarah C. Blevins to war-
rant and defend the title to this land "against the claim
of every person whomsoever."

It was admitted that Mary E. Collier was the wife
of Daniel Collier at the time of the assessment of the
taxes and the institution of the suit, which resulted in
the sale of the land for taxes. Sarah C. Blevins is the
wife of her coplaintiff, W. R. Blevins. After she
acquired the title to this property, she attempted to
mortgage and sell it, but was unable to do so on account
of the supposed existence of an inchoate right of dower
in Mrs. Collier in it. She in conjunction with her hus-
band then bought Mrs. Collier's interest and paid there-
for $150, taking a deed from her and her husband for it.
They then sold the land to Wm. L. Gaston for $900, and
they bring this suit against defendant upon his cove-
nant of warranty, and in the circuit court they obtained

judgment for the amount thus paid Mrs. Collier for her inchoate right of dower, and defendant appeals.

Two controlling questions arise in this case : *First.* Is Mrs. Collier's inchoate right of dower in the land described cut off by the tax sale and deed ? *Second.* Can there be any breach of a general covenant of warranty by the existence of an inchoate right of dower in the land ?

The most important question is this : Did the tax deed made by the sheriff of Johnson county, to Tuttle, in 1880, divest Mrs. Collier of her inchoate right of dower in the premises, and will it operate to bar her dower in case she survive her husband, it being admitted that he is still alive ?

This question has never been passed upon in this state, and we have, therefore, given it a most careful consideration. I am unable to find any reliable guides in the adjudications of other states on this subject ; for local statutes have almost wholly controlled the determination of the question. I am hence driven to our own statutes and adjudications on the subject of taxation and sale of land for taxes, in order to arrive at a correct conclusion. I can use only general conclusions reached by text-writers and the decisions of the courts as illustrating the principles we announce. I will briefly refer to some of these. In the first place I will inquire into the general nature and extent of the power of taxation.

"The power to impose taxes," says Judge COOLEY, "is one so unlimited in force and so searching in extent that the courts scarcely venture to declare that it is subject to any restrictions whatever, except such as rest in the discretion of the authority which exercises it. * * * No attribute of sovereignty is more pervading, and at no point does the power of the government affect more constantly and intimately all the relations of life, than through the exactions made under it. Taxes are defined to be burdens or charges imposed by the

legislative power upon persons or property to raise money for public purposes. The power to tax rests upon necessity, and is inherent in every sovereignty." Cooley Con. Lim. [ 3 Ed. ] 479.

The power to tax is analogous to the right of eminent domain. The same author in his work on taxation (p. 237) uses this language : " When the state has need of the property of citizens for its sovereign purposes, it may lawfully appropriate it against the will of the owner either under the power to tax or the right of eminent domain." Mr. Blackwell, on the same subject, says : " There is no difference in principle between the power of taking land for public use and the power to tax and enforce its collection by a sale of the land. In both cases the land is taken for the use of the public ; they only differ in degree." 1 Black. Tax. Tit. [ 5 Ed. ] sec. 99. A tax in legal contemplation is not a debt due by the owner of property. It is a charge levied upon the person or property of the citizen for a public purpose, by the state. *Carondelet v. Picot*, 38 Mo. 125 ; Cooley on Tax. 15 ; *In re Life Ass'n of America*, 12 Mo. App. 40. And imprisonment for the non-payment of taxes is not imprisonment for debt. Cooley on Tax. 17.

I will in the second place inquire into the general rule in regard to the sale of land for taxes, and the title acquired by the purchaser at such sale.

There are in the several states of this union two methods of listing lands for taxation. One is to list the lands " as the summation of all interests," and the other is to list the interest of the owners of the land as set out in the assessment roll. And much depends on the method of the assessment as to the interest that passes to the purchaser at a tax sale. Indeed, when the principles underlying the exercise of the taxing power and the sale of lands for unpaid taxes are examined it will be found that the title conveyed at a tax sale depends almost wholly on the theory upon which the land is listed and valued for taxation. On this subject Mr.

Blackwell, in his work on tax titles [ 5 Ed.] section 954, says: "When the sale and deed are valid and have their complete effect * * * the interest conveyed depends upon the circumstances * * * and the statutes. *If a particular interest* in the land is separately assessed as such, a sale of that does not pass the *whole land*, nor will a sale of the land pass such interest.   If the land alone is assessed *as the summation of all interests*, liens, incumbrances, etc., the general rule is that the deed .carries a fee-simple, absolute, a new and independent title, the land itself being conveyed; and all prior liens, incumbrances and interests in, to or upon the land are extinguished.   * * *   In those states where the tax is a charge upon the land alone, where no resort in any event is contemplated against the owner or his personal estate, and where the proceeding is strictly *in rem*, the tax deed will undoubtedly have the effect to destroy all prior interests in the estate, whether vested or contingent, executed or executory, and those in possession, reversion and remainder.   * * *   On the other hand where the law requires the land to be listed in the name of the owner of the fee, or of any other interest in the estate, provides for a personal demand of the tax, and in case of default authorizes the seizure of the body or goods of the delinquent in satisfaction of the tax, and in terms, or upon a fair construction of the law, permits a sale of the land only when all other remedies have been exhausted, then the sale and conveyance by the officer pass only *the interest of him in whose name it was listed*, upon whom the demand was made, who had notice of the proceedings, and who alone can be regarded as legally delinquent.   In such case the title is a derivative one, and the tax purchaser can recover in ejectment only such interest as he may prove to have been vested in the defaulter at the time of the assessment."

As we shall see, later on, the method of listing lands for taxation and the sale of them for unpaid

taxes in Missouri does not come under either of the categories mentioned by Mr. Blackwell, but partakes of the nature of both somewhat.

Mr. Cooley in his work on taxation [2 Ed.] page 464, on this same subject, says : "The usual method of enforcing the payment of taxes upon property is by putting the property up at public sale. *No one* questions the right to do this, and *no one* doubts that the sale, if fair and made in compliance with the law, and after all necessary preliminary steps have been taken, vests a perfect title in the purchaser to the full extent that the statute *shall declare*."

With these general rules as lights to guide us, let us examine the statutes and decisions in Missouri in reference to this question.

The tax sale involved in this case was made under the revenue law first enacted in 1877, and which has substantially continued in force to this time. The title to the property was vested in fee in Daniel Collier, and he alone was made a party to the tax suit. Mrs. Collier not being made a party, the question is whether her contingent right of dower is barred by the tax proceeding, sale and deed. If it is, there can be no recovery in this case for breach of warranty.

The statute in force at the time the tax suit was instituted required the suit to be brought against the "owner" of the property. R. S. 1879, sec. 6837. Was Mrs. Collier an "owner of the property," within the meaning of that statute? Her right of dower at the time of these proceedings was and is yet inchoate only. McClean, J., in *Johnston v. Vandyke*, 6 McLean, 422, says : "It is not easy to define the right of dower before the death of the husband." It is not only an inchoate right but contingent. "It depends upon the death of the husband. If he survive his wife, she has no right transmissible to her heirs, nor during the life of the husband can she give it any form of property to her advantage. * * * So long as the husband shall

live, it is only a right in legal contemplation, depending upon the good conduct of the wife and the death of the husband. Until the death of the husband, the right, if it may be called a right, is shadowy and fictitious, and like all rights which are contingent may never be vested."

In *Moore v. City of New York*, 4 Seld. 110, the court says in speaking of the inchoate right to a claim for dower that it is a right "contingent upon the death of the husband. Such a possibility may be released, but it is not, it is believed, the subject of grant or assignment. It is not of itself property, the value of which may be estimated, but an inchoate right, which on the happening of certain events may be consummated so as to entitle the widow to demand and receive a freehold estate in the land."

Mr. Scribner in his work on dower says: "Although, therefore, an inchoate right of dower cannot be properly denominated an *estate* in lands nor indeed *a vested* interest therein, and notwithstanding the difficulty of defining with accuracy the precise legal qualities of the interest, it may nevertheless be fairly deduced from the authorities, that it is a substantial right possessing, in contemplation of law, the attributes of property, and to be estimated and valued as such." 2 Scrib. on Dow., p. 8.

If I understand the rulings of this court, however, on the subject it is not conceded that this contingent right of the wife is capable of being estimated and valued. In *Hinds v. Stevens*, 45 Mo. 209, Judge Bliss, in discussing the effect of a partition proceeding on this right, says: "If the land be divided in specie, her inchoate right attaches at once to the land thus set apart to the husband in severalty; and, if it be sold, I know not how it would be possible to so estimate the value of that shadowy right, as to pay her or invest for her any portion of the proceeds of the sale." And in *Durrett v. Piper*, 58 Mo. 551, the court, through

Blevins v. Smith.

WAGNER, J., says: "A dower interest upon the part of the wife, whilst the husband is living, is an inchoate. and contingent right. Its value depends wholly upon the death of the husband * * *. It is a mere possibility which may be released, but cannot be the subject of grant or assignment. The covenant being for an indemnity against a claim of dower, it is obvious that no breach could happen till the contingency arose which would legally vest in the wife a valid or substantial claim."

From all the authorities I conclude that the wife is not the owner of *any estate* or *vested right* in the property of which her husband is seized. But she is the owner of a contingent interest to dower, however; and the question is, whether the owner of such a contingency in real estate is an owner of property in such a sense as to require that she be made a party to a tax suit in order to bar that right. In our revenue laws, the word "owner" is used several times. Section 6706, Revised Statutes, 1879, provides that the assessor shall list land in numerical order "with the owner's name, if known, and, if not, then the name of the original patentee," etc.; and if the land cannot be listed numerically then he shall describe it as briefly as he can, giving the "owner's name if known," etc. By section 6834, the clerk of the county court is required to make a "back-tax book" and insert therein "a correct list in numerical order of all tracts of land and town lots on which back taxes shall be due, * * * setting forth opposite each tract of land or town lot the name of the owner, if known, and, if the owner thereof be not known, then to whom the same was last assessed.

It is provided by section 6837, that "all actions commenced under the provisions of this chapter shall be prosecuted in the name of the state of Missouri, at the relation and to use of the collector, and against the owner of the property; and all lands owned by the

same person or persons may be included in one petition." Section 6853 provides that "each tract of land or lot shall be chargeable with its own taxes, no matter who is the owner, nor in whose name it is or was assessed or advertised."

I have thus set out in detail the provisions of the revenue laws in which the word "owner" occurs to enable us to determine what was meant by it; for it is a well-established canon of statutory construction that where the same word is used more than once and in different connections it must be held to have the same meaning in all, unless it be *manifest* it is used in different senses. Now, what did the general assembly mean when it required the assessor to place the name of the "owner" opposite each tract of land or town lot on the assessment roll? It will scarcely be claimed that the *wife* of the owner is included in that term as used in *this* connection.

And the same may be said of the provision in regard to the making of "the back-tax book." The word "owner," as used in *that* connection, would not include the wife of a man who held the legal title. If the word "owner" does not include the wife, having simply an inchoate right of dower, when applied to the assessment roll and the "back-tax book," neither will it include her, when applied to a section of the *same* statute requiring suit for taxes to be brought against the "owner." She cannot be regarded as an owner of property, of which she is seized, within the meaning of any of the provisions of the revenue laws quoted, and hence for that reason she is not a necessary or proper party to an action to collect taxes on the land of her husband.

But she was not a necessary party for another reason. This court has frequently held that the word "owner" as used in these laws does not necessarily mean the *actual* owner. The collector is not bound to go beyond the record to ascertain the owner of property,

against whom to bring suit, and a purchaser at a sale for taxes against the person appearing from the record to be the owner will take the title in fee as against the true owner, whose deed or title is not of record, if such purchaser has no knowledge of the unrecorded title. *Vance v. Corrigan*, 78 Mo. 94; *State ex rel. Hunt v. Sack*, 79 Mo. 661; *Evans v. Robberson*, 92 Mo. 192; *Allen v. Ray*, 96 Mo. 542.

The records of the county in which the land is situated do not always, nor usually, give the name of the wife, and the revenue officers cannot get the names of the wives in making assessments or in instituting proceedings for the enforcement of the state's lien for taxes. Hence, if the statute in terms required the collector to make the wives of the owners of land parties to the proceedings to collect the taxes it would be impracticable in a very large proportion of cases for him to comply with the requisition.

Having determined that the wife is not an owner of the property of her husband in such a sense as to require her to be made a party to an action to enforce the lien for taxes against his land, it seems this ought to dispose of the case; for when the suit is brought against the owner, and the proceeding is regular, the purchaser gets a title "in fee" to the land sold. And as to the meaning of an estate in "fee," Mr. Tiedeman in his work on real property, section 36, says: "The word 'fee' without any qualifying adjective implies an *unlimited* estate of inheritance. Such is also the case with the term 'fee simple' and 'fee simple absolute.' The three terms 'fee,' 'fee simple' and 'fee simple absolute' may be used interchangeably; the adjectives in the last two are surplusage." See, also, *Allen v. McCabe*, 93 Mo. 138.

The lien of the state for taxes is a "first lien on the land." This lien attaches to the *res*, and is paramount to every interest and estate in the land as well as to all other incumbrances, whether prior or subsequent.

*Gitchell v. Kreidler*, 84 Mo. 472. And a sale to foreclose this lien in an action where all owners of the land within the meaning of the statute have been regularly made parties "digs up," as it were, the "fee" and vests it in the purchaser. *Jones v. Devore*, 8 Ohio St. 430; *Osterberg v. Trust Co.*, 93 U. S. 424; Cooley on Tax. [2 Ed.] 445, and cases cited.

I have not lost sight of the doctrine laid down by this court in the case of *Gitchell v. Kreidler*, 84 Mo. 472, that the title acquired by a purchaser at a tax sale under our statute is a derivative one. This I do not deny, but we hold that when all of the. owners of the land taxed, within the meaning of our revenue laws, are made parties to the suit, a perfect title passes to the purchaser under these laws, because it is provided that a title in "fee" shall pass. Cooley on Tax. [2 Ed.] 464. In the same case in which Judge BLACK declares that a tax title under our statutes is a derivative one, he is careful to say also that the judgment in these cases is *in rem*.

But it is contended that a judgment against the husband for the taxes cannot affect the wife's inchoate right of dower, and section 2197, Revised Statutes, 1879, is quoted in support of this contention. That section is as follows: "No act, deed or conveyance, executed or performed by the husband, without the assent of the wife, evidenced by her acknowledgment thereof * * * and no judgment or decree confessed by or recovered against, him, and no laches, default, covin or crime of the husband, shall prejudice the right and interest of the wife provided in the foregoing sections of this chapter."

This is chapter 29, entitled "of dower." Plaintiffs denominate the failure of Collier to pay the taxes on the land and permitting judgment to go against it for them as "laches" on his part, within the meaning of the word as used in the section quoted.

Mr. Blackwell in his work on tax titles [5 Ed.] section 961, holds that a sale for taxes does not cut off the inchoate right of dower under a similar statute in Illinois, and he quotes several cases as authority for that position ; but on examination it will be found that not a single case he quotes involved the sale of land for taxes. In the most of them it was held that an execution sale under a judgment against the husband *for debt* did not bar dower, either consummate or inchoate. There is no doubt about the soundness of that position. That is the unquestioned law in Missouri. This writer announces the same doctrine again in section 954, but his reference is to section 961 of his own work above as authority for it. It is not easy to determine Mr. Blackwell's meaning, when it is a recognized principle even by himself, that the state can sell the property of the citizen for the payment of taxes either by a direct proceeding against the owner, or against the *rem*, or against both, and convey a title in fee to the purchaser. 1 Black. on Tax. Tit. [5 Ed.] sec. 75, *et seq.* and sec. 954; Cooley's Con. Lim. [3 Ed.] 402 ; Cooley on Tax. 672. We presume he does not intend to announce the doctrine that the state cannot sell the inchoate right of the wife to dower in her husband's real estate, by any process whatever. He intended, no doubt, to simply state the rule to be that in order to bar this right the wife must in some way be made a party to the proceeding. We can hardly conceive that the "shadowy" right of dower of the wife, while her husband is living, can be regarded as any more sacred than the vested estate of the husband.

In section 954, *supra*, he states the doctrine to be that where the state assesses and sells the land irrespective of any particular owner's interest in it "the tax deed will undoubtedly have the effect to destroy *all prior* interests in the estate, whether *vested* or *contingent*." And Mr. Cooley says in the extract above

quoted that "*no one* doubts that the sale if in compliance with law *vests a perfect title to the purchaser to the full extent that the statute shall declare.*"

That the legislature has the power to divest by a proceeding of this character the wife's inchoate right of dower is well settled upon principle and authority. Cooley on Tax. [2 Ed.] 444; Black. on Tax Tit., secs. 138, 954; Cooley on Con. Lim. [3 Ed.] 360; 2 Scrib. on Dow., p. 8, *et seq.;* Woerner's Am. Law Adm'r, 112; *Massoson v. Rice,* 29 N. W. Rep. 168; *Jones v. Devore,* 8 Ohio St. 430.

Let us examine section 2197, *supra,* and see if a judgment for taxes where the husband alone is made a party to the action is within its scope and meaning. That section provides that "no judgment or decree confessed by or recovered against him, and no laches, default, covin or crime of the husband, shall prejudice the right of the wife" to dower. The decree or judgment here referred to does not apply to a judgment for taxes. There can be no *personal* judgment for taxes. The judgment must be against the land. *State v. Sargeant,* 76 Mo. 557; R. S. 1879, sec. 6838. Hence, the judgment in this case was not "confessed by nor recovered against" Collier. The judgment was rendered against the land, and a special execution ordered for the sale of that. The state obtained judgment and sold the land against the will of Collier. The judgment did not grow out of any contract of Collier. The section quoted was intended to prevent the husband doing anything, either actively or passively, to bar dower, without the consent of his wife. A tax proceeding is a proceeding *in invitum.*

The revenue laws of Missouri require that the land itself, and not the interest of any particular owner, be valued for taxation, and that taxes be levied on the land. *Allen v. McCabe,* 93 Mo. 138. In the first place, the assessor is required to list the land and set opposite each tract or town lot the name of the owner, if

known. In the second place "the back-tax book" must contain a list of the tracts of land and town lots with the names of the owners, if known, set opposite to them. In the third place the judgment must state the amount of taxes due on each tract of land or lot and "shall decree that the lien of the state be enforced, and that the real estate or so much thereof as may be necessary to satisfy such judgment, interest and costs be sold, and a special *fieri facias* shall be issued thereon, which shall be executed as in other cases of special judgment and execution, and said judgment shall be a first lien upon said land." Sec. 6838, *supra.* Here it is required that the judgment shall not only be against the land but the taxes must be decreed against the tract or lot on which they have been levied. "The state has no lien upon one lot for taxes charged against another, although both lots are owned by the same person. *State ex rel. v. Sargeant,* 76 Mo. 557. In the fourth place the statute provides that the land is chargeable with the taxes levied thereon "no matter who is the owner nor in whose name it is or was assessed." Sec. 6853. And in the fifth place the sheriff shall, after the sale of land for taxes, make a deed "which shall convey a title in fee to the purchaser of the real estate therein named."

Construing all these provisions together it is manifest that the proceeding under our laws for the sale of lands for taxes is essentially a proceeding *in rem.* 2 Black. on Tax Tit., sec. 954; Cooley on Tax. [2 Ed.] 527. It is true the tax when levied is made a personal charge against the owner of the property assessed, and may be collected by the seizure and sale of his personal property, and the owner must be made a party to the action for the recovery of taxes due on land; yet when it is sought to sell the land itself the proceeding is confined strictly to the establishment of a lien against it, and no personal judgment is permitted against the owner not even for costs, though known and a party to

the suit. *Milner v. Shipley*, 94 Mo. 109; *State ex rel. v. Sargeant, supra.* It seems anomalous, too, that the collector can seize and sell the personal property of the person *he* supposes is the owner, but that no personal judgment can be rendered against the owner when he is brought before the court, and it has been judicially determined who the owner is; but this is nevertheless true as is apparent from the plain letter of the statute and the adjudications of this court.

In *Watt v. Donnell*, 80 Mo. 195, it was held that the tax books were not evidence to show even *prima facie* who the owner of the land is. Under this ruling, it would appear difficult for the collector to make any demand and especially any seizure of personal property for a land tax.

It is clear that the judgment or degree referred to in section 2197, *supra*, means a judgment or decree *against the husband* founded upon some act, contract, tort or fraud of his and does not embrace a judgment obtained by the state *in rem*, in the exercise of its paramount power of taxation or eminent domain.

It seems to have been uniformly held by the courts of this country, when this question came before them, that where lands are appropriated by the exercise of eminent domain the dower of the wife, though she be not a party to the proceeding, is barred. *Moore v. New York*, 4 Sandf. (N. Y.) 456. In this case the land had been condemned for public use, and the full value paid to the husband, the wife not being made a party to the proceeding. The court said: "The question which is here presented is, whether a wife has such an interest in the premises owned by the husband, while her right of dower is inchoate, as can be divested by this act of the legislature and the proceedings under it. * * * The right being merely an incident to the marriage relation, it seems to us that while this right is thus inchoate, and before it has become vested by the death of the husband, any regulation of it may be made by the legislature, though

its operation is, in effect, to divest the right, the marriage relation itself being within the power of the legislature to modify or even abolish it. The power of the state to take private property for public use results from its right of eminent domain, and that power is not restricted except by constitutional provisions, that just compensation shall be made to the owner. In this case the husband was deemed *to be the owner of the entire estate* in the land, and the inchoate right of the wife was not considered by the commissioners, and we think justly so, as the subject of estimate as to its value separate from his. Indeed, the value of her interest, such as it was, would seem to be scarcely capable of being estimated as a separate interest. We see no reason to doubt that the commissioners were right in considering the entire estate in these lands as vested in the husband, and he having been paid the full value for them, the corporation by force of the act became seized of the lands in fee simple absolute, discharged of any claim of dower of the wife therein."

The case went to the court of appeals of New York, and was there affirmed. 8 N. Y. 110. GARDINER, J., who delivered the opinion of the latter court said : "The estate of the widow after assignment of dower is a continuation of the estate of her deceased husband. It follows, that while living *he, as owner, is entitled to and represents the entire fee.* This the statute vests on confirmation of the report of the commissioners and concludes all those entitled to the land, and all other persons whomsoever. Mrs. Moore, at the time of the proceedings to appropriate the real estate, was not, as we have seen, entitled to it, but her husband ; and she was concluded by the general language of the act. * * * Dower is not the result of contract but a positive institution of the state founded on reasons of public policy. In the case under consideration the land was taken against the consent of the husband, by an act of sovereignty, for the public benefit. *The only person*

*owning and representing the fee* was compensated by being paid its full value. The wife had no interest in the land, and the possibility which she did possess was incapable of being estimated with any degree of accuracy."

The inchoate right of dower may be barred not only by the state in its exercise of the right of eminent domain, without consulting the wife, but the husband also can by his own act bar this right by a dedication of his property to public use when the dedication is complete or when the public accepts the dedication. This point was ruled by the supreme court of Indiana in *Duncan v. City of Terre Haute*, 85 Ind. 104.

Judge DILLON, in his treatise on municipal corporations [2 Ed.] section 459, says: "As dower is not the result of contract, but is a positive legislative institution, it is constitutionally competent for the legislature to authorize lands to be taken by a municipal corporation for a market, street or other public use, upon an appraisement and payment of their value to the husband, *the holder of the fee*, and such taking and payment will confer an absolute title divested of any inchoate right of dower. Nor is the widow *dowable in lands dedicated by her husband* in his lifetime to the public, where the dedication is complete, or has been accepted and acte l upon by the municipal authorities."

On the same subject Mr. Washburn in his work on real property [4 Ed.] page 269, uses this language: "One mode in which dower may be defeated remains to be mentioned, and that is by the exercise of eminent domain during the life of the husband, or what is equivalent to it, the dedication of land to the public use."

In *Gwynne v. The City of Cincinnati*, 3 Ohio, 24, the husband gave the city a square for a market house and a street opening to it. His wife did not join in this dedication. The city ordinance accepted this dedication. The supreme court held that the wife was barred. It is there said: "The counsel for complainants insist

that it is a case to be distinguished from that of public grounds for public uses, but the court are unable to comprehend the distinction. When a town is laid out, the law requires the plat to be recorded, and by such record the streets become public highways, and the title to the grounds set apart for public uses is vested in the county for the purposes contemplated. The uses thus created are inconsistent with the exertion of any private right while the use remains ; consequently, all private rights must be either suspended or abrogated. Such has been the general understanding, not only in this state, but also as far as we are informed in other states also.''

Mr. Scribner, in his work on dower, after reviewing the adjudged cases in England and America, and after an examination of the principle involved, concludes the discussion of this question thus : '' The rule fairly deducible from these authorities would seem to exclude dower in all cases where lands are dedicated to the public for a legitimate purpose, and the public have acquired a right to the enjoyment thereof, or where they are lawfully appropriated in virtue of the right of eminent domain. The reasoning of the courts appears to apply as well where lands are granted and used for public parks, public libraries or other public use of a like character, as where they are devoted to the purposes of a market place or a public highway." Scrib. on Dow., chap. 27, part 7.

Let us examine this question now, in the light of the Missouri statutes and decisions.

We have a chapter, and have had for many years, providing for the dedication of streets and grounds to the public. R. S. 1889, ch. 127. The statute authorizes the proprietor of land to make, acknowledge and file a plat on which shall be designated the streets and grounds dedicated to the public, and that such plat, when acknowledged by the proprietor and recorded, '' shall be a sufficient conveyance to vest the fee of such

parcels of land as are therein named, described or intended for public uses in such city, town or village when incorporated in trust for the uses therein named." R. S. 1889, sec. 7313. No provision whatever is made for the concurrence of the wife in the dedication ; but the authorities we have quoted would seem to indicate that such dedication, when accepted by the public, would operate to bar the inchoate right of dower of the wife of the "proprietor," where she does not join in the dedication.

Our road laws and laws in regard to eminent domain provide for the appropriation of land for the public use, but no provision is anywhere made to obtain the inchoate right of dower of the wife of the owner of the land which is appropriated. The statutes on these subjects do not look beyond the husband, when he is seized of the fee. Though the question has never been directly involved in any case determined by this court, yet Judge Bliss in *Maguire v. Riggin*, 44 Mo. 512, *loc. cit.* 515, quotes and approves the doctrine of *Moore v. New York*, *supra*.

By common consent among the people and members of the bar of this state, it has not been deemed necessary to make the wife a party to a proceeding to condemn her husband's land for a public road or a railroad in order to cut off her inchoate right of dower. This common opinion in this instance has so long prevailed in Missouri, and has been so universally acted upon, that its overthrow now would introduce great confusion in the titles to estates. It is not merely speculative and theoretical, but has been made the groundwork and substance of practice. The presumption is that this practice is founded upon the rule announced by Scribner and Washburn and the cases quoted above.

Again, it has been held in this state that where the wife joins with her husband in a mortgage of his real estate, she is not a necessary party to a suit to foreclose the mortgage, and that a foreclosure against the husband

alone bars her inchoate right of dower. *Riddick v. Walsh*, 15 Mo. 519 ; *Thornton v. Pigg*, 24 Mo. 249 ; *Hoyt v. Oliver*, 59 Mo. 188.

It is true that in the *Riddick- Walsh case* the foreclosure occurred at a time when our statute provided that a sale under a general execution against the husband carried the wife's dower; yet Judge Scott did not rest the determination of the case wholly upon the statute, but held that the foreclosure carried the dower without regard to the statute. He uses this language : "On the one hand it was argued that as the land out of which this right of dower is claimed had been sold under a special *fieri facias* on the judgment in the mortgage proceedings, that was a sale under execution within the meaning of the act, and, therefore, the right of dower was barred. On the other hand, it was contended that the wife was a necessary party to the proceedings to foreclose the equity of redemption, and, not being joined, she could not be affected by the judgment in a suit to which she was not a party. There is a marked distinction throughout the books between cases where a suit affects a wife's interest in real estate which is claimed in her own right, and those in which she has only an inchoate right of dower. In the former class of cases no instance is to be found in which it is not maintained that a wife is a necessary party to the proceedings in order to divest her right. In the latter class the husband alone is deemed the proper party to defend a proceeding instituted to divest the title to land to which a mere inchoate right of dower has attached. * * * The execution of the mortgage, with the wife's acknowledgment and relinquishment of dower, the proceedings to foreclose the equity of redemption, the judgment, execution and sale by the sheriff, taken with his deed, are the links in the chain of title of the purchaser at the sheriff's sale. The wife, having given her assent to the deed and having a mere inchoate right in her husband's estate, who was still in existence, and he

being competent to defend such interests of the wife in all other proceedings against him, no reason is perceived why the wife should have been made a party to this suit.   So in either point of view the wife is barred of her dower."

The doctrine laid down in this case was directly involved in the case of *Thornton v. Pigg, supra,* decided in 1857, and was approved by this court.   And again, in 1875, the same doctrine received the sanction of this court in *Hoyt v. Oliver, supra.*

In 1855 the question arose in *Lee v. Lindell,* 22 Mo. 202, whether a judgment of partition against the husband divested the wife's inchoate right of dower, and it was distinctly held by a majority of the court that it did.   And it was also held that section 2197, which was then in force, did not affect the question. In other words it was held that a judgment in partition against the husband was not included in that section. Judge SCOTT, who delivered the opinion of the court, said :   "There being no law requiring her to be made a party, it is not perceived how the arbitrary use of her name can impart validity to a proceeding, which without it would not affect her.  Nothing seems clearer than that, if the law does not require a married woman to be made a party to a proceeding, the making her one arbitrarily cannot affect her rights.   If the proceeding is such as does not bind her, the use of her name without authority of law cannot produce such a consequence.   Under our law, the wife of the husband, who owns an interest in the land to be divided, is not required to be made a party in partition, no more than such wife is required to be plaintiff or defendant in an action of ejectment for lands claimed by the husband, and in which she may have a right of dower.   If the husband alone is competent to protect her interests in this action why not in other actions in which her interests are the same ?"   And *Riddick v. Walsh, supra,* is cited as authority.

The general principle upon which this decision proceeded was that the wife's interest was subordinate and subject to the right of partition, and for that reason she was not a necessary party. The same question arose again, and was again determined the same way in 1870, in *Hinds v. Stevens*, 45 Mo. 209. The opinion this time was unanimous. This case goes further, however, than that of *Lee v. Lindell*. The judgment in the *Hinds-Stevens case* was rendered against the husband in his lifetime but the sale did not occur till after his death, when his widow applied for her dower, she not having been made a party to the proceeding. Judge Bliss delivering the opinion of the court said : "Since the decision of this court in *Lee v. Lindell*, 22 Mo. 202, it has never been deemed necessary to make the wife of a person interested in the partition of lands a party to a proceeding for partition. The statute does not expressly require it, and I cannot conceive of any interest she can have in the result more than in any other suit touching the realty. * * * The very broad language in relation to parties to proceedings in partition was substantially the same, in the statute of 1835, under which *Lee v. Lindell* was decided, as in that of 1855, covering the proceeding in question." Since this decision the question has not been mooted in this state.

In 1875 in the case of *Hoyt v. Oliver*, *supra*, it was held that a wife was not a necessary party to a suit to correct a deed of trust given on the land of the husband.

In the case of *Bailey v. Winn*, 101 Mo. 649, it was held that a wife was not a necessary party to an action to foreclose a vendor's lien in order to bar her dower. See, also, *Fountaine v. Sav. Inst.*, 57 Mo. 552 ; *Duke v. Brandt*, 51 Mo. 221.

Where the husband has taken a title bond for land, and paid part of the purchase money, his wife has an inchoate right of dower in the land thus held. *Hart v. Logan*, 49 Mo. 47; and yet, in such case, if the

husband's interest be sold under a general execution the inchoate right of dower is barred ( *Worsham v. Callison*, 49 Mo. 206 ) ; and the husband alone in such case can transfer the property and bar his wife's right to dower. *Duke v. Brandt*, 51 Mo. 221.

It seems clear that the reason of the rule, applicable to the exercise of eminent domain and the dedication of land to public use, to the foreclosure of mortgages and vendor's liens and to partition proceedings, applies to the case at bar with great force. When the state appropriates the land of a private citizen for public use, it does it against his will. So when the state enforces its lien against the land of the citizen it does it against his will. If one proceeding cuts off the inchoate right of dower, why does not the other? In case of foreclosure of a mortgage or vendor's lien the husband and wife both are interested to show first that nothing is due, and, in the second place, they have a right to receive the surplus. This court has said that the husband is competent in that case to protect the interests of his wife. In the case at bar the husband and wife were interested, first, to show that no tax was due on the land, and, in the second place, they had a right to receive the surplus arising from the sale after the satisfaction of the lien. In the proceeding instituted against him to enforce the state's lien for the taxes, was he not competent to protect his wife's interests? Was he not, as remarked by GARDINER, J., in *Moore v. City of New York*, *supra*, "the only person owning and representing the fee?"

If a judgment in partition against the husband bars the wife's dower, *a fortiori* will not a judgment enforcing the state's lien for taxes, when the husband is made a party bar her dower? In a partition proceeding the wife is peculiarly interested. It is said her dower will attach at once to the land allotted to her husband in severalty, but may not land be allotted to him that is unimproved, and hence be utterly valueless

to the widow? She has no right to be heard in regard to whether partition shall be made at all, or in regard to what land shall be allotted to her husband. And if the land be sold the proceeds go to her husband, and she is cut off entirely. But still this court has held, and the rule is now firmly established, that the husband is competent to protect his wife's interests in such a proceeding. If that be the rule where the husband *may* on his *own* motion commence the proceeding, with how much greater force will it apply in a case where the state sells the land against the will of the husband as well as the wife? It is true no one shall be deprived of his property without "due process of law." But a proceeding *in rem* in which no named person is served with notice is due process of law. Cooley, Con. Lim. [3 Ed.] 402; Cooley on Tax. [2 Ed.] 51.

A proceeding defended by one person who represents another is due process of law. This was held in the cases we have cited, not probably in so many words, but in effect. A good illustration of this principle is to be found in the administration of estates. The administrator or executor is the only necessary party to establish a debt against the estate of the testator or intestate, though the debt thus established may finally operate to deprive the heir of the property he would otherwise take. Yet he is bound by the judgment against the administrator or executor. And where the mortgagor dies the administrator or executor is the only necessary party defendant in a proceeding of foreclosure, and a judgment against him not only bars the widow but the heir also. *Tierney v. Spiva*, 97 Mo. 98.

The owner in fee of land represents his heirs as well as creditors in all actions involving the title to the land. In such actions he *represents* the "fee," and this includes every one who will derive title through him. If he is competent to protect those who will be his heirs as also his creditors, whose interests are vastly superior, as a rule, to a wife's inchoate right of dower, is he not

competent to protect his wife's interests? The dower right of a widow is a continuation of the husband's estate. "Her dower interest whether inchoate or consummate is part of the fee." *Doty v. Baker*, 11 Hun, 222; *Moore v. New York, supra.*

There is no provision in the revenue laws for making the wife a party to the action against the land of her husband, and as was said in *Lee v. Lindell*, in the absence of such a provision, making her a party arbitrarily cannot affect her interests. It being provided that the "title in fee" shall pass to the purchaser under a tax judgment, and no provision being made for bringing in the wife, it is the plain intent of these laws to pass not only the husband's interest but the wife's also, where he alone is sued. Cooley on Tax. 464.

The courts, in all the instances named, where the wife's inchoate right of dower was held to have been cut off by a proceeding to which she was not a party, have proceeded upon the general principle that this contingent right was subordinate to other rights—that the wife's right attached subject to a superior claim. So a tax lien in our state being paramount to all interests and claims, the wife's inchoate right of dower attaches subject to that lien, and she is no more a necessary party to a proceeding to foreclose it, in order to bar the right, than she is a necessary party in the instances referred to.

From the authorities cited, and from what has been said in this opinion, I deduce these propositions:

*First.* That when an action is brought against the owner of land within the meaning of that word as used in our revenue laws, to establish and enforce the state's lien thereon for taxes, a valid judgment rendered, the land sold thereunder and the sheriff executes a deed to the purchaser, *the whole title in fee is conveyed,* as the statute declares. *Second.* That the wife is not an "owner" within the meaning of the statute, by virtue of her inchoate right of dower in her husband's land in

such a sense as to require her to be made a party to a tax suit against her husband, in order to bar her contingent interest. *Third.* That the husband in such case *represents the fee,* and is competent to protect his wife's interests, and hence, *fourth,* that a valid tax sale of the husband's fee-simple estate cuts off the wife's inchoate right of dower.

II. This is the conclusion I have reached upon an examination of the authorities, but I am equally well satisfied that this conclusion is sound upon principle also. It is to the interest of the state, of course, that it should have the power to collect its taxes by the sale of land, and to thereby convey the title in fee ; but it is of vastly more importance to property-owners that the proceeding to sell lands for taxes should in the first place be as inexpensive as practicable, and in the second place that the interest and title offered for sale should be *definitely* known. Suits for taxes are expensive at best ; but to require the wife to be made a party with the husband would add to that expense. Frequently the tax is only a dollar or two, and it would cost that much or more to make the wife a party. And when she is made a party, what can she accomplish more than her husband can accomplish? Nothing. His interests are identical with hers. The state, in its efforts to enforce the collection of the tax, is the common enemy of both. The proceeding is *in invitum* as to both.

But, when lands are offered for sale against the will of the owner, it is important to the owner that the estate offered should be definitely known ; otherwise it will be sacrificed. If the title and estate offered for sale be known with certainty, the land will probably bring its value. If the collector be required to make the wife as well as the husband parties to the suit in order to bar her dower, in ninety-nine-hundredths of the tax sales, it will not, it cannot, be known whether there be a wife at all or not, and hence there will be a doubt as

to the extent of the title conveyed. Sacrifices of land must follow necessarily, and these sacrifices will largely exceed the value of the "shadowy" right of inchoate dower. It is a well-known fact that nearly all tax suits are against. non-resident owners, and, in such cases, it is utterly impracticable to learn the name of the wife of the owner, or to know that the owner is married. Sacrifices of property must result from the enforcement of such a requirement, and these sacrifices will generally exceed the value of the contingent right of inchoate dower. It is said, the sale of land for taxes is against common right, and is not, therefore, favored in law. That is true. But it is a common saying that "taxes and death" are certain. Every property-owner knows that an annual tax will be levied on his property. He knows or ought to know when it becomes due in each year, and the sooner it is known that, if the taxes be not paid within the prescribed time, the property will be sold and the owner will lose his property. This rule would be better for the state and better for the taxpayer. Better for the state because it would be sure to collect its taxes, and better for the owner, because, when he knows payment will be enforced certainly, he will be more apt to pay, and if for any reason he should fail to pay the taxes due by him, and his property be sold to pay them, it would bring its full value, when it is known that a good title in fee is to be conveyed. Hence, all embarrassments thrown in the way of tax sales simply operate to make taxpayers careless in the first place about the payment of their just share of the expenses of the state, and in the second place to sacrifice the property sold because no one can know definitely what is offered for sale. It should be the policy of the state to create competition at these sales, so that there may be a surplus left after the payment of costs and taxes, to go to the owner. Cooley on Tax. [2 Ed.] 464.

III.   The second contention on the part of the appellant is that there was no breach of the covenant of general warranty in this case at the institution of this suit, nor now because there existed only a right of inchoate dower in Mrs. Collier, and no breach could occur till this right became consummate and vested by the death of her husband.   It is universally held that inchoate dower constitutes an incumbrance on land, and the rule is that the covenant is broken as soon as made in such case.   This breach, however, is technical only, and the trial court committed error in giving judgment for substantial damages.   *Walker v. Deaver*, 79 Mo. 664, and cases cited.   Enough has been said in the former part of this opinion to show that this right of inchoate dower is too shadowy and unsubstantial to be valued or estimated.

I am of opinion that the case ought to be reversed without remanding.