(Superior Court of Cincinnati—Special Term.)

THE QUEEN CITY ELECTRIC LIGHT CO. v. THE GIBSON HOUSE CO.

---

*Breach of contract—Measure of damages.*

The plaintiff, an electric light company, entered into a contract with the defendant by which, for a specified period of time, the plaintiff agreed to furnish, and the defendant to accept sufficient electricity to light a hotel under the management of the defendant. Before the expiration of the time specified, the defendant notified the plaintiff that it would not receive the electric current from plaintiff, and severed the wires connecting the plaintiff with its hotel. The plaintiff notwithstanding such action and notice by the defendant, continued to furnish electricity in its wires up to the point where they had been severed by the defendant. At the expiration of the contract the plaintiff began an action against defendant to recover the full amount which would be due from defendant as if it had accepted and used the electricity as provided in the contract.

Held, That the recovery of plaintiff was limited to the amount of damages it had suffered by the breach of the contract, and that it could not recover the full contract price of the electricity, which under the contract the plaintiff was bound to furnish and the defendant to accept.

---

SMITH, J.

The plaintiff says "it is engaged at the city of Cincinnati in the business of furnishing electric light, and doing all wiring therefor, and that the defendant is engaged in carrying on the hotel business in what is known as the Gibson House in the city of Cincinnati; that on the 9th day of December, 1892, the defendant entered into a contract with the plaintiff for the lighting of said Gibson House for a term of one year, with the privileges of four years, from the date at which this plaintiff commenced to furnish light under said contract; that it commenced furnishing light for said Gibson House on the 3rd day of January, 1893, and that at the expiration of one year therefrom, the defendant elected to continue under said contract, as it had the right to do, and that this plaintiff continued to furnish current to the defendant for the lighting of said Gibson House under said contract and to tender bills therefor, as in said

contract provided; and the defendant continued to take light under said contract, as therein proivded, and to pay the bills so rendered, as aforesaid, until the 15th day of August, 1894, at which date the defendant wrongfully, and in violation of the provisions of said contract, severed connection with plaintiff, and refused thereafter, and has ever since refused, to take the electric current for lighting purposes from this plaintiff."

Plaintiff further says, "that it has at all times since the making of said contract faithfully complied with all the provisions thereof, incumbent upon it to perform, and that it has been ready, willing and able to continue furnishing electric light, as in said contract provided, ever since said 15th day of August, 1894; and that it has in fact furnished and tendered its electric current to defendant on plaintiff's wires up to and at the point where the same were by defendant wrongfully disconnected with defendant's wiring as alleged; that it is still so furnishing the electric current, and that since the 15th of August, 1894, it has continued to render bills as theretofore to defendant for current so furnished under said contract, but that defendant refuses to pay the same; that said bills amount to $2,673, for which amount, with interest, it asks judgment against the defendant."

The defendant demurs to the petition on the ground that it does not state facts sufficient to constitute a cause of action.

The claim of counsel for plaintiff in the argument on the demurrer is, that notwithstanding the notification by the defendant that it refused to further observe the obligations of its contract, the plaintiff had the right to continue to manufacture electricity sufficient for the purposes of the defendant, and that upon the tender of the same from day to day the defendant became indebted to the plaintiff for the full amount of the contract price for such electricity the same as if it had been accepted and used by the defendant.

It was suggested by me in the course of the argument, that even if the position of the plaintiff was not sound in law as to the right to recover the full amount which would be due the same as if the electricity had been accepted by defendant, nevertheless the petition might still be good as against a demurrer, for the reason that the plaintiff, in any event, would be entitled to damages, and a mistaken claim in the petition as to the amount or the measure of damages would not invalidate the petition to the extent that it could be said of it that it did not state a cause of action.

Counsel for plaintiff, however, concede that the petition seeks to recover the full contract price the same as if the electricity tendered had been accepted and used, and disavow any other purpose sought by the petition. Under these circumstances I have considered the demurrer to the petition as presenting only this question.

The question presented for determination, then, is this: Where a contract is made to purchase articles or commodities of merchandise which are to be manufactured by the vendor, and before the articles or commodities are manufactured the vendee notifies the vendor that he will not receive the articles or commodities, and there is, therefore, a breach of the contract, has the vendor, nevertheless, the right to proceed to manufacture the articles or commodities, and thereafter sue the vendee for the full price of the same when manufactured, or is he limited to the recovery of such damages as he may have suffered at the time of the notice or breach?

The plaintiff contends that the vendor has the right to proceed to manufacture the articles or commodities and sue for the full price, whereas the defendant claims that the vendor has no such right.

The rule as to the measure of damages where the contract is exe-cuted, as for instance the sale of articles or commodities in existence at the time of sale, is well settled. In such a case the vendor has an election either to sue for the full price of the articles or to retain the articles and sue for the damages suffered by the refusal to receive the same.

But where the contract at the time of notice of the breach has not been executed, there are two well setted principles with reference to the right to recover damages that would seem to determine this question, without the aid of authority even if authority upon the precise question were lacking, which it is not.

First. The purpose of the law in giving the right of action for recovery of damages or breach of contract is to enable the one injured by the breach to recover the loss he has suffered by such breach; and, second, it is the duty of one suffering from a breach of contract so to conduct himself as to make his loss as light as possible. James v. Allen county, 44 Ohio St., 233.

In considering the question at bar and bearing in mind these principles, it may properly be asked if the plaintiff is given the right to recover all the damages which he would have suffered by the refusal of the defendant to observe its contract, is he not fully indemnified for his loss? And if, after notice by the defendant that it does not wish the article to be manufactured by the plaintiff, it be allowed to continue to manufacture the article, and then sue the defendant for the full price of the article, is the plaintiff minimizing his damages as the law requires, or is he not enhancing it to the damage of the defendant without any additional profit to himself?

The injustice of the rule contended for by plaintiff is made evident by an illustration. If we suppose that, by the refusal of the defendant to observe its contract with the plaintiff, the entire loss of plaintiff on its contract, taking loss of profits, expenditures, etc., would have been $5,000, ought not the plaintiff to be satisfied to recover such $5,000 as damages? Why should it be permitted to manufacture its commodity and then recover for the full price of the same as if it had been accepted and used by the plaintiff, such price aggregating, for illustration, $100,000? To allow it to recover $100,000 would not increase its damages, which would still remain $5,000, while the result to the defendant would be immeasurably different.

The leading case upon this subject in this country is Clark v. Marsiglia, 1 Denio, 317. In that case Clark delivered a number of paintings to Marsiglia to clean and repair, agreeing to pay a certain price for each. Marsiglia cleaned and repaired some of them, and charged $75. After he had commenced work upon the others, defendant counter-manded his order as to those upon which he had concluded not to have the work done. Marsiglia, notwithstanding, finished the pictures, and sued to recover for the whole and for the materials furnished, insisting that defendant had no rigth to countermand his order. The court below ruled in his favor; the verdict for the whole amount was recovered. The Supreme Court of New York, in reversing the ruling of the trial court, said:

"The plaintiff was allowed to recover as though there had been no countermand of the order; and in this the court erred. The defendant, by requiring the plaintiff to stop work upon the paintings, violated his contract and thereby incurred a liability to pay such damages as the plaintiff should sustain. Such damages would include a recompense for the labor done and materials used, and such further sum in damages as might upon legal principles, be assessed for the breach of the contract; but the plaintiff had no right by obstinately persisting in the work, to make the penalty upon the defendant greater than it would otherwise

have been.  To hold that one who employs another to do a piece of work: is bound to suffer it to be done at all events, would sometimes lead to great injustice.  A man may hire another to labor for a year, and within the year his situation may be such as to render the work entirely useless to him.  The party employed can not persist in working, though he is entitled to the damages consequent upon his disappointment.  So if one hires another to build a house and subsequent events put it out of his power to pay for it, it is commendable in him to stop the work, and pay for what has been done, and the damages sustained by the contract.  He may be under a necessity to change his residence; but in the rule contended for, he would be obliged to have a house which he did not need and could not use.

To make citations from the many cases in which this doctrine is approved and followed, would simply result in extending this opinion without adding anything to the principle so well stated in Clark v. Marsiglia, supra.  I refer, however, to the following cases collected by counsel for defendant, in which the principle is adopted and followed: Darby v. Johnson, 21 Vt., 21; Gibbons v. Bente, 51 Minn., 499; Davis & Rankin v. Bronson, 2 N. Da.; Cameron v. White, 74 Wisc., 425, 431; Moline Scale Co. v. Beed, 52 Iowa, 303; Nebraska City v. Gas Co., 9 Neb., 339, 343; United States v. Beehan, 110 U. S, 338, 344.

I have been at pains to examine all the cases cited by counsel for plaintiff, but I find nothing in them which contravenes the conclusions I have reached.  Almost without exception they are cases of executed contracts, where, as we have seen, the rule is quite different from that which controls in those cases in which, like the present, the contract is executory and for an article to be manufactured, and notice of refusal to accept is given before it is manufactured.

The demurrer to the petition will therefore be sustained.

J. B. Foraker and C. E. Prior, for plaintiff.

J. W. Warrington and J. B. Boutet, for defendant.